[Civ. No. 69296. Second Dist., Div. One. Jan. 25, 1984.]

IVAN C. TIHOLIZ, Plaintiff and Appellant, v.
NORTHRIDGE HOSPITAL FOUNDATION, Defendant and Respondent.

COUNSEL

John C. Tiholiz for Plaintiff and Appellant.

McDermott & Trayner and Thomas B. Curtis for Defendant and Respondent.

OPINION

**HANSON (Thaxton), J.**—Appeal taken from the denial of a writ of administrative mandate (Code Civ. Proc., § 1094.5). Petitioner Ivan C. Tiholiz,

M.D., sought the writ to compel respondent Northridge Hospital Foundation to set aside the suspension imposed on petitioner's practice of medicine and surgery at the hospital for 120 days, commencing February 23, 1976, and ending June 19, 1976. We affirm the judgment rendered below.

FACTS

There appears to be no dispute about the events which occasioned respondent to invoke the disciplinary procedures set forth in its "Medical Staff Bylaws" (hereinafter Bylaws). On October 11, 1975, a young patient named Barham was admitted to respondent hospital's emergency room for treatment of head and knee injuries sustained in an automobile accident. Barham was first seen by emergency room personnel at 3 a.m., and was subsequently placed on respondent's pediatrics ward after the personnel had consulted with Barham's physician, petitioner Tiholiz. During the patient's two-day stay at the hospital, petitioner did not see him, although he approved his discharge by telephone.

Petitioner's failure to examine and care for his patient personally was regarded by respondent as a violation of respondent's Bylaws, specifically article III, section 3(d), which refers to the obligation of medical staff members, of which petitioner was one, "to provide continuous care and supervision of his patients. . . ."

On October 17, 1975, Alan Moltzman, M.D., chairman of the pediatrics department, asked petitioner by letter of that date to explain his handling of the Barham incident to the department, in writing, within 10 days. On October 24, 1975, petitioner responded to Holtzman's request in writing, stating that he never saw Barham in the hospital; however, petitioner claimed he had not admitted him.

On December 8, 1975, Maurice Fields, M.D., president of medical staff, wrote to petitioner, inviting him to appear before the medical staff executive committee to discuss the Barham matter. This action was taken pursuant to article VII, section 1 (e) of the Bylaws. That section specifically declares that the meeting with the executive committee is not a hearing, but is an informal prehearing procedure. However, the section also provides that if corrective action is contemplated against a staff member—action involving reduction of staff privileges, suspension or expulsion from staff membership—"the affected practitioner shall be permitted to make an appearance before the executive committee prior to its taking action . . ." Petitioner did not appear at either the December 1975 or January 1976 meetings of the executive committee, although the Fields letter had given him that choice. At the January 19, 1976 meeting, the executive committee recom-

mended suspension of petitioner's membership and clinical privileges for 120 days, commencing February 23, 1976. This was communicated to petitioner.

Petitioner then requested a hearing before the judicial review committee (JRC), provided for in the Bylaws as the next administrative level for handling disputes such as this, and described in considerable detail in article VIII of the Bylaws. The hearing was scheduled for April 12, 1976.

Petitioner appeared at the hearing. The Bylaws did not permit representation by counsel at such hearings. He explained the Barham situation as follows: "The fact that the patient was not seen is inexcusable, however, when I try to restructure [the situation] in my own mind, I can't understand how this got to this point, because if I was going to admit I would have transferred the patient to Valley. I erred because during the night with all these phone calls, and calls from the reverend who wanted to know the status of things [the patient's father], I may have been a little groggy with sleep, but I don't think so. In spite of my feeling of inadequacy, there is a lack of communication between people and airing the extent of the problem."

Petitioner said there was "a marked failing and a failure in my particular handling of the case." He also declared that he had been "remiss" in failing to take the matter of attendance at the executive committee meetings seriously enough.

The JRC approved the executive committee recommendation of suspension, and further provided that there should be continuing review of petitioner's admissions to the hospital. There was no certified shorthand reporter present at this hearing, but notes on what transpired there were taken in shorthand by secretary Mary Harryman, and were transcribed by her.

On August 10, 1976, petitioner requested an "Appellate Review" hearing of his suspension before respondent's board of trustees, as provided in section 4 of article VIII of the Bylaws. The trustees were respondent's governing body; petitioner submitted a written statement to the trustees, who reviewed the judicial review committee's decision and affirmed it. Petitioner was apprised of this action on August 16, 1976.

Petitioner's petition for mandate was filed October 25, 1977, in the superior court. It was served in timely fashion. There the matter rested until 1982 when, after noticed motion, the trial court conducted its hearing on December 6, 1982. Judgment was entered for respondent on January 25, 1983, and this appeal followed.

### PETITIONER'S CONTENTIONS

Petitioner does not claim that the basic facts concerning the Barham incident did not occur as reported here, nor that the penalty imposed upon him was too severe. He presents technical arguments in this long-delayed effort to overturn the 1976 administrative action of respondent hospital.

1. Petitioner claims he was not afforded a fair hearing.

2. Petitioner claims respondent hospital did not follow its own Bylaws procedures in disciplining him, and that such failure was a per se violation of petitioner's right to fair procedure.

3. It is claimed that the trial court erred in allowing additional evidence to be offered by respondent at the hearing on the writ in the superior court.

4. Petitioner claims there was insufficient evidence in the administrative record to support respondent's action against him.

5. Petitioner contends that failure to afford him a *presuspension* hearing was a violation of fair procedure which could not be cured by subsequent administrative action.

### DISCUSSION

### I.

The concept that, under California law, a private group or institution affected with a public interest may not deprive an individual of fundamental interests without affording the individual fair procedure rights was set forth with clarity in *Pinsker* v. *Pacific Coast Society of Orthodontists* (1974) 12 Cal.3d 541 [116 Cal.Rptr. 245, 526 P.2d 253]. ■ A physician's access to a hospital, whether public or private, is such a fundamental interest. (*Anton* v. *San Antonio Community Hosp.* (1977) 19 Cal.3d 802 [140 Cal.Rptr. 442, 567 P.2d 1162] and *Ezekial* v. *Winkley* (1977) 20 Cal.3d 267 [142 Cal.Rptr. 418, 572 P.2d 32].)

It is now well established that (1) a physician may not be deprived of hospital access without the employment of fair procedure; (2) that "fair procedure," like the constitutional concept of due process, does not lend itself to any fixed format, but must be assessed on a case-by-case basis; (3) fair procedure does require, however, at a minimum, adequate notice of the administrative action proposed or taken by the group or institution, and a reasonable opportunity to be heard. (*Pinsker, Anton* and *Ezekial, supra*; see

also *Hackethal* v. *Loma Linda Community Hosp.* (1979) 91 Cal.App.3d 59 [153 Cal.Rptr. 783]; *Applebaum* v. *Board of Barton Memorial Hosp.* (1980) 104 Cal.App.3d 649 [163 Cal.Rptr. 831]; and *Cipriotti* v. *Board of Directors* (1983) 147 Cal.App.3d 144 [196 Cal.Rptr. 367].)

■ The trial court, in making its determination concerning the procedural stance of this matter, i.e., the fact that the respondent's executive committee chose to suspend petitioner *prior* to meeting with him or holding a formal hearing, refused to exalt form over substance. The record discloses that, in essence, petitioner had been given the opportunity to present whatever explanation he had concerning the Barham incident to respondent's committee, prior to any disciplinary action, and that minimal standards of fair hearing procedure were subsequently met. (Contrast the situation presented in *Volpicelli* v. *Jared Sydney Torrance Memorial Hosp.* (1980) 109 Cal.App.3d 242 [167 Cal.Rptr. 610].)

Implicit in the trial court's determination was that petitioner himself was at least partially responsible for the JRC hearing's being of the "post-suspension" variety, due to petitioner's failure to attend either of the previous meetings of the executive committee, and his admitted failure to take the respondent's concern about his professional behavior at the hospital seriously enough. As the trial court observed, at the JRC hearing in April 1976, well into the suspension period, petitioner *was* afforded the opportunity to defend himself, and his remarks set forth above in this opinion, persuaded not only the administrative tribunal but the trial court that Petitioner's conduct was, as he put it, "inexcusable."

We note that respondent's Bylaws provide for summary suspension under certain conditions; these summary procedures were recently upheld, in the face of a "fair procedure" challenge. The suspension involved preceded the hearing afforded the psychiatrist involved. (*Cipriotti, supra,* 147 Cal.App.3d 144.)

We uphold the procedure employed by respondent here, under the particular circumstances presented. As we indicated previously, the concept of "fair procedure" does not require rigid adherence to any particular procedure, to bylaws or timetables. In our view, the trial court correctly determined that petitioner was treated fairly.

## II.

■ Petitioner's claim that the administrative record did not contain substantial evidence in support of his suspension is without merit. Pursuant to

Code of Civil Procedure section 1094.5, subdivision (d), as amended in 1978, the trial court's function was not that of exercising its independent judgment in making this determination, but was limited to a determination of whether respondent private hospital's administrative record contained substantial evidence in support of the administrative disposition. (*Cipriotti, supra,* at p. 157.) Much of the substantive evidence concerning the petitioner's conduct was provided by petitioner himself. ■ Our task, as a reviewing court, remains limited to determining whether there was substantial evidence supporting the trial court's ruling. We have no difficulty finding such evidence here.

### III.

Several days after the JRC's decision to uphold the suspension of petitioner, petitioner challenged the manner in which the JRC hearing was conducted on two bases: he claimed that Mary Harryman's notes and transcription of what occurred at the hearing was inaccurate, and he claimed that one of the physicians sitting on the JRC should have been removed because of the bias against him. Petitioner was not very specific in identifying the transcript's inaccuracies or the individual against whom the bias charge was being made, but did assert that he had raised the claim of bias at the hearing, and this fact had not been recorded by Mary Harryman.

When this matter came on for hearing—some five years after the events in question—the respondent submitted, and the trial court received as additional evidence, certain portions of declarations obtained by respondent from Mary Harryman and Gordon McGregor, M.D., who served as chairman of the JRC during the hearing afforded petitioner. Harryman defended her version of the hearing as recorded, and denied that respondent had challenged at the hearing the manner in which the record was being made or mentioned bias on the part of any JRC member. McGregor also denied that petitioner had raised the issue of bias at the JRC hearing.

■ On appeal, petitioner claims that the trial court erred in allowing these declarations (in part) admitted. Code of Civil Procedure section 1094.5, subdivision (e) provides that "Where the court finds that there is relevant evidence which, in the exercise of reasonable diligence, could not have been produced or which was improperly excluded at the hearing before respondent, it may enter judgment as provided in subdivision (f) of this section remanding the case to be reconsidered in the light of such evidence; or, in *cases in which the court is authorized by law to exercise its independent judgment on the evidence,* the court may admit such evidence on the hearing on the writ without remanding the case." (Italics added.)

Petitioner's position is that the case should, at a minimum, have been remanded to the administrative tribunal for a further evidentiary hearing on the issues of inaccuracy of the record and bias—issues concerning procedural fairness.

Our research has revealed no case where the admissibility of "newly discovered evidence" relating to the accuracy of the administrative record, or bias, or procedural unfairness was at issue in the trial court.

One well-reasoned decision, *Windigo Mills* v. *Unemployment Ins. Appeals Bd.* (1979) 92 Cal.App.3d 586 [155 Cal.Rptr. 63], held that it was proper for the trial court hearing a writ of administrative mandate to receive evidence concerning events occurring *after* the administrative hearing. The *Windigo* trial court, however, was exercising an independent standard of review, as provided by subdivision (e), while the trial court in our matter was limited to ascertainment of substantial evidence.

The trial court, in the instant matter, perceived the issue of fairness as the first issue before it, and expressly declared that *as to that issue* it would employ an independent standard of review. The trial judge had previously referred to the change of law reflected in the amendment of subdivision (d) with respect to private hospitals.

We agree with the trial judge's approach to the problem, for two reasons. First, a litigant has a fundamental interest at stake in procedural fairness, including but not limited to an interest in the compilation of an accurate hearing record and having the disposition made by unbiased individuals. (*Applebaum, supra,* 104 Cal.App.3d 649.) Fundamental interests are protected best by employment of the independent judgment standard in superior courts undertaking review of administrative dispositions. Second, we do not believe that the Legislature intended its amendment of subdivision (d), providing certain protection to private hospitals in administrative matters, to result in precluding those same hospitals from offering newly discovered evidence in the trial court in a proper case.

Even if the trial court erred in receiving the declarations, in our view no reversal of its ruling is warranted. As to the merits, the trial court properly determined that there was substantial evidence in the administrative record in support of the administrative disposition. It is unlikely that a contrary result would have been reached upon remand.

DISPOSITION

The judgment is affirmed.

Spencer, P. J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 28, 1984.