[No. F012076. Fifth Dist. July 30, 1990.]

WILLIAM E. BOLLENGIER, Plaintiff and Appellant, v.
DOCTORS MEDICAL CENTER et al., Defendants and Respondents.

[No. F012062. Fifth Dist. July 30, 1990.]

WILLIAM E. BOLLENGIER, Petitioner, v.
THE SUPERIOR COURT OF STANISLAUS COUNTY,
Respondent;
DOCTORS MEDICAL CENTER et al., Real Parties in Interest.

**COUNSEL**

Farella, Braun & Martel, Bruce R. MacLeod and Dennis M. Cusack for Plaintiff and Appellant and for Petitioner.

Ellingsen, Christensen & van Hall, Jay D. Christensen, Frank A. Uribie and Lowell C. Brown for Defendants and Respondents and for Real Parties in Interest.

No appearance by Respondent in No. F012062.

**OPINION**

**FRANSON, P. J.—**

### STATEMENT OF THE CASE AND FACTS

On July 20, 1988, real party in interest Doctors Medical Center (DMC) summarily suspended all of petitioner Dr. William E. Bollengier's medical staff privileges. Petitioner, a cardiothoracic surgeon, had been on the DMC medical staff for 12 years. The suspension notice stated, "In general, the

reasons for this suspension are that your inability to work with others in the hospital presents a real and substantial danger to patient care."

The suspension was authorized by Raymond Shamp, M.D., and J. Douglas Dent, the chief executive officer of DMC. At the time of the suspension, the department of surgery had two cochairmen, Dr. Shamp and Dr. L. Raymond Cimino.

Petitioner requested an informal interview with the medical executive committee which took place on July 29, 1988. At this interview Mr. Dent presented the grounds for the summary suspension. Mr. Dent and Dr. Shamp were then excused, and petitioner responded to the allegations. Thereafter, by a vote of ten to one with one abstention, the executive committee took further action to sustain the summary suspension by converting it to a revocation of all of petitioner's medical staff privileges. Petitioner was informed of this decision the same day by letter. He was also advised that under the medical staff bylaws he had the right to request a hearing before the medical review committee within 30 days and, if a hearing were requested, to receive a concise statement of charges or reasons.

Petitioner requested a review committee hearing on August 26, 1988, and thereafter received the statement of charges on September 9. This statement initially specified 74 incidents in support of the charges of misconduct. However, after being revised in January 1989, it specified 91 such incidents.

Petitioner asked to appear before the executive committee again and was invited to do so on October 28, 1988. Petitioner presented his comments regarding the suspension and "pledged to do everything in his power to give patients the appropriate level of care and maintain the appropriate rapport with other physicians, the nursing staff and administration." The executive committee concluded that petitioner's presentation did not provide any significant new information, and thus, the executive committee did not alter its previous decision.

A hearing officer was appointed to preside over the review committee hearing. On December 21, 1988, a special "law and motion" hearing was held. At that time petitioner raised a number of challenges to the procedural validity of the charges. However, the hearing officer concluded that neither he nor the medical review committee had the power under the bylaws to dismiss the charges for procedural defects. Rather, the review committee could dismiss the charges if the evidence at the hearing did not support them. The hearing officer further found that, although Drs. Shamp and Cimino cochaired the department of surgery, Dr. Shamp had the

authority to summarily suspend petitioner without the concurrence of Dr. Cimino.

On February 15, 1989, before the first session of the review committee hearing, petitioner sought an alternative writ of mandate under Code of Civil Procedure section 1085[1] from the superior court. In his writ petition and memorandum, petitioner argued that he should not be required to stand trial on charges which were procedurally defective. The petition alleged that Dr. Shamp and Mr. Dent had neither the authority nor the requisite grounds to suspend petitioner and that the charges were invalid per se because the incidents listed in the statement of charges had been specified by DMC's attorney without prior review or approval by the executive committee. The superior court denied petitioner's writ application on the ground that he had not exhausted his administrative remedies.

By letters dated February 24, 1989, petitioner requested both the executive committee and the governing board of DMC to lift his suspension and vacate the pending charges based on the alleged procedural irregularities. The executive committee responded that it did not elect to terminate the suspension or withdraw the charges and further found no basis to conclude any procedural defect existed. The governing board responded that pursuant to the bylaws it was precluded from taking any action until after the time for requesting an appellate review.

Petitioner has both appealed from the superior court's denial of his writ petition and petitioned this court for mandamus relief. These proceedings have been consolidated. ■ However, the superior court's denial of the writ petition is an appealable order. (*Elmore* v. *Imperial Irrigation Dist.* (1984) 159 Cal.App.3d 185, 190-191 [205 Cal.Rptr. 433].) ■ The writ petition and the appeal both challenge the superior court's order. Thus, the writ can be denied on the ground that there is an adequate remedy at law. (*Malibu West Swimming Club* v. *Flournoy* (1976) 60 Cal.App.3d 161, 164 [131 Cal.Rptr. 279].)

The parties present extensive arguments regarding the facts surrounding the suspension and provide conflicting evidence to support their respective positions. Petitioner presents evidence of his outstanding surgical skill and "legendary" patient care. He alleges the suspension was economically motivated. In contrast, DMC sets forth evidence of petitioner's "gross misconduct" and concludes the summary suspension was necessary to protect patients and others from petitioner. ■ Factual findings have not yet been made in this case and, as is evident from the arguments, many of the

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

facts are hotly contested. This court cannot make the required factual determinations. (*Larson* v. *Thoresen* (1951) 36 Cal.2d 666, 670 [226 P.2d 571].) Thus, all of the discussion and exhibits regarding the disputed facts are irrelevant to the issues before us.

### Objections and Request for Judicial Notice

DMC has presented objections to the admission of portions of the declarations submitted by petitioner. All of the objected to statements pertain to disputed facts surrounding petitioner's suspension. Thus, these objections are sustained on the ground that the exhibits are irrelevant to this writ proceeding and appeal.

DMC has also requested this court to take judicial notice of the medical review committee hearing transcript involving petitioner, model medical staff bylaws prepared for the California Hospital Association and the California Medical Association and a page from the Accreditation Manual for Hospitals. This request is also denied on the ground of irrelevancy. DMC has submitted the hearing transcript to "confirm factual information regarding petitioner's practice and the reasons for his summary suspension." However, as noted above, factual findings regarding the suspension have not been made, and thus, any such evidence presented by the parties is irrelevant. The model medical staff bylaws and accreditation manual section, submitted as evidence of the validity of DMC's bylaws, are also irrelevant. Petitioner is not contesting the validity of the medical staff bylaws as written, but rather contends that the bylaws were not followed.

### DISCUSSION

### I. *The exhaustion of administrative remedies doctrine bars this proceeding.*

Petitioner contends the trial court's holding that the doctrine of exhaustion of administrative remedies barred the petition for writ of mandate was an error of law. Although petitioner is requesting review of an administrative proceeding, he is seeking traditional mandamus under section 1085 rather than administrative mandamus under section 1094.5. DMC contends neither section is applicable. Thus, a threshold issue is which, if either, form of mandamus is applicable to the proceeding at this juncture.

"A traditional writ of mandate under section 1085 is a method of compelling the performance of a legal, usually ministerial duty, whereas the purpose of an administrative mandamus proceeding, under section 1094.5, is to review the final adjudicative action of an administrative body."

(*Vernon Fire Fighters* v. *City of Vernon* (1980) 107 Cal.App.3d 802, 808 [165 Cal.Rptr. 908].) However, mandamus under section 1094.5 is not removed from the general law of mandamus or exempted from the established principles, requirements and limitations pertaining to traditional mandamus. "The full panoply of rules applicable to 'ordinary' mandamus applies to 'administrative' mandamus proceedings, except where modified by statute." (*Woods* v. *Superior Court* (1981) 28 Cal.3d 668, 673-674 [170 Cal.Rptr. 484, 620 P.2d 1032].)

"California has consistently differentiated 'legislative' and 'adjudicatory' actions and the manner in which they may be reviewed." (*Saleeby* v. *State Bar* (1985) 39 Cal.3d 547, 560 [216 Cal.Rptr. 367, 702 P.2d 525].) Adjudicatory matters are those in which the government's action affecting an individual is determined by facts peculiar to the individual case, whereas legislative decisions involve the adoption of a " ' "broad, generally applicable rule of conduct on the basis of general public policy." ' " (*Ibid.*) Section 1094.5, administrative mandamus, is used to review adjudicatory determinations and is not available to review quasi-legislative actions of administrative agencies. (*Id.* at pp. 560-561.) Quasi-legislative acts are reviewable by traditional mandamus. (*Id.* at p. 561.)

■ Petitioner's suspension was an adjudicatory action. As noted above, petitioner's challenge to the procedural validity of the suspension is based on an alleged violation of the bylaws. Such a challenge would generally invoke administrative mandamus review. (*Kumar* v. *National Medical Enterprises, Inc.* (1990) 218 Cal.App.3d 1050, 1054 [267 Cal.Rptr. 452].) However, petitioner is relying on the rule that "[t]raditional mandamus is available when a local agency has *clearly* abused its discretion." (*Thelander* v. *City of El Monte* (1983) 147 Cal.App.3d 736, 748 [195 Cal.Rptr. 318], italics added.)

" 'While, of course, it is the general rule that *mandamus* will not lie to control the discretion of a court or officer, meaning by that it will not lie to force the exercise of discretion in a particular manner . . . [it] will lie to correct abuses of discretion, and will lie to force a particular action by the inferior tribunal or officer, *when the law clearly establishes the petitioner's right to such action.*' " (*Thelander* v. *City of El Monte, supra*, 147 Cal.App.3d at p. 748, first italics original, second italics added.)

Here, in light of the dispute surrounding the merits of the suspension, petitioner cannot demonstrate a clear abuse of discretion at this time. Petitioner argues that "there is no discretion vested in Real Parties to circumvent and ignore the fair procedures established by law and by the bylaws relating to the summary suspension of a staff doctor." However, whether real parties circumvented and ignored those fair procedures is a contested

factual question which has not been resolved. Since petitioner's right to the action he is requesting is not clearly established, traditional mandamus is not the appropriate method of review.

■ Although petitioner brought this proceeding under section 1085, this court can treat it as if it were brought under section 1094.5, if section 1094.5 applies. (*Anton* v. *San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 813-814 [140 Cal.Rptr. 442, 567 P.2d 1162].)

Section 1094.5 provides, in part: "(a) Where the writ is issued for the purpose of inquiring into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal, corporation, board or officer, the case shall be heard by the court sitting without a jury. . . ."

"(b) The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.

". . . . . . . . . . . . . . . . . . .

"(f) The court shall enter judgment either commanding respondent to set aside the order or decision, or denying the writ. Where the judgment commands that the order or decision be set aside, it may order the reconsideration of the case in the light of the court's opinion and judgment and may order respondent to take such further action as is specially enjoined upon it by law, but the judgment shall not limit or control in any way the discretion legally vested in the respondent."

■ A writ of mandate under section 1094.5 may be issued to review an administrative decision only if that decision is final. (*Kumar* v. *National Medical Enterprises, Inc., supra*, 218 Cal.App.3d 1050, 1055.) This requirement is regarded as an aspect of the exhaustion requirement. (*Ibid.*) "Under the doctrine of the exhaustion of administrative remedies, a party must go through *the entire proceeding* to a *'final* decision on the merits of the entire controversy' before resorting to the courts for relief." (*Ibid.*, italics added.) ■ Here, a final decision on the merits has not been made. Thus, petitioner is not entitled to relief under section 1094.5 unless his case falls into one of the exceptions to the exhaustion requirement.

■ "It is settled that the rule requiring exhaustion of administrative remedies does not apply where an administrative remedy is unavailable [citation] or inadequate [citation]." (*Tiernan* v. *Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 217 [188 Cal.Rptr. 115, 655 P.2d 317].) Further, even where there is an administrative remedy to exhaust, the exhaustion requirement is excused where its pursuit would be futile, idle or useless. (*Jacobs* v. *State Bd. of Optometry* (1978) 81 Cal.App.3d 1022, 1030 [147 Cal.Rptr. 225].) However, the futility exception is very narrow and will not apply unless the petitioner can positively state that the administrative agency has declared what its ruling will be in a particular case. (*Sea & Sage Audubon Society, Inc.* v. *Planning Com.* (1983) 34 Cal.3d 412, 418 [194 Cal.Rptr. 357, 668 P.2d 664].)

■ The medical staff bylaws provide that a physician's privileges may be summarily suspended "[w]henever action must be taken immediately in the best interest of patient care in the hospital."

After a hearing is requested, a medical review committee must be promptly appointed. At the conclusion of the hearing, the review committee must make a written recommendation to the executive committee which then must make a written recommendation to the governing body. However, the governing body cannot take action on the executive committee's recommendation until after the expiration of the time for requesting appellate review.

Within 30 days after the giving of notice to the parties of the executive committee's recommendation, the physician may request appellate review by the governing body. The grounds for appeal are: "substantial and prejudicial failure of the MRC [(medical review committee)] or the executive committee to comply with these bylaws or to afford due process or a fair hearing; the action or recommendation that prompted the hearing, or any substantial part thereof, was arbitrary, unreasonable or capricious; or the [medical review committee's] or executive committee's recommendations or any substantial part thereof were clearly contrary to the weight of the evidence; or that a medical staff bylaw, rule or regulation relied on by the [medical review committee] or executive committee in making its recommendations lacked substantive rationality."

Although the bylaws provide for review of the type of procedural defect petitioner is asserting, i.e., the failure to comply with the bylaws, petitioner contends the review procedure is inadequate because the bylaws do not contain a means of reviewing the procedural validity of the charges before a hearing on the merits of the suspension is conducted. However, the governing board has the power to review petitioner's procedural contentions and

to grant relief. Thus, the exhaustion requirement cannot be excused on the grounds that either the issue is outside the scope of the review procedure or the procedure is not tailored to resolve this type of challenge. (Cf. *Glendale City Employees' Assn., Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328, 342-343 [124 Cal.Rptr. 513, 540 P.2d 609].) Therefore, the resolution of this issue comes down to whether the timing of the administrative review causes it to be inadequate.

The superior court's ruling indicates that petitioner had the opportunity to appeal the procedural validity of the charges to the executive committee but did not do so. However, the bylaws do not provide for such an interim review. "[A]n opportunity for administrative review does not constitute the sort of 'remedy' which a party must exhaust before invoking the assistance of the courts unless the statute or regulation under which such review is offered 'establishes clearly defined machinery for the submission, evaluation and resolution of complaints by aggrieved parties.'" (*Endler* v. *Schutzbank* (1968) 68 Cal.2d 162, 168 [65 Cal.Rptr. 297, 436 P.2d 297].) Thus, the failure to take advantage of any alleged opportunity to appeal to the executive committee has no effect on petitioner's ability to invoke the assistance of the courts at this point. Further, since under the bylaws the first opportunity to challenge the procedural validity of the charges is on appeal to the governing board, it cannot be said that petitioner has already waived any of his procedural challenges.

 A party is not required to exhaust the available administrative remedies when those administrative procedures are the very source of the asserted injury. (*Chrysler Corp.* v. *New Motor Vehicle Bd.* (1979) 89 Cal.App.3d 1034, 1038-1039 [153 Cal.Rptr. 135].) This rule is merely another facet of the inadequate administrative remedy exception to the exhaustion rule. (Cf. *Horn* v. *County of Ventura* (1979) 24 Cal.3d 605, 611 [156 Cal.Rptr. 718, 596 P.2d 1134].) Under this exception, a party is excused from exhausting the administrative remedies where the challenge is to the constitutionality of the administrative agency itself or the agency's procedure. (*Chrysler Corp.* v. *New Motor Vehicle Bd., supra*, 89 Cal.App.3d at p. 1039.)

 Petitioner relies on the *Chrysler* case to support his argument that he should be excused from exhausting the administrative remedies. However, petitioner has stressed that he is not challenging the validity of the bylaws as written. Rather, he is challenging the charges on the ground the bylaws were not followed. Thus, petitioner does not come within the inadequate administrative remedy exception as set forth in *Chrysler*. The admin-

istrative procedures in and of themselves are not the source of the asserted grounds for relief.

As noted above, petitioner contends the charges were brought in violation of the bylaws because Dr. Shamp did not have authority to summarily suspend him without the concurrence of the department cochairman, Dr. Cimino, and because the attorney for DMC usurped the charging function of the executive committee. However, the California Supreme Court has held in the context of union grievances that the organization's "violation of its own rules which inflicts the initial wrong furnishes no right for direct resort to the courts." (*Holderby* v. *Internat. Union etc. Engrs.* (1955) 45 Cal.2d 843, 847 [291 P.2d 463].) "It is only when the organization violates its rules for appellate review or upon a showing that it would be futile to invoke them that the further pursuit of internal relief is excused." (*Ibid.*) These principles are applicable to proceedings concerning the restriction or suspension of a physician's hospital privileges. (Cf. *Haller* v. *Burbank Community Hospital Foundation* (1983) 149 Cal.App.3d 650, 656 [197 Cal.Rptr. 45].) Since petitioner's claim is based on DMC's alleged violation of its bylaws, this rule appears to preclude court review at this stage in the proceedings.

However, petitioner contends that *Holderby* was effectively overruled by *Mooney* v. *Bartenders Union Local No. 284* (1957) 48 Cal.2d 841 [313 P.2d 857, 64 A.L.R.2d 1154]. In *Mooney*, the court stated the rule announced in *Holderby* was subject to certain exceptions. "Thus the internal procedure must be such as will afford an accused member substantial justice, and further pursuit of internal relief is excused when a union violates its rules for review or when invocation of those rules would be futile." (48 Cal.2d at p. 844.) Contrary to petitioner's interpretation, *Mooney* merely sets forth the well-recognized exceptions to the exhaustion requirement where the remedy is inadequate or where pursuit of the remedy would be futile. (Cf. *De Gonia* v. *Building Material etc. Union* (1957) 155 Cal.App.2d 573, 579-580 [318 P.2d 486].)

 To be adequate, a remedy must afford the individual fair procedure rights. (*Tiholiz* v. *Northridge Hospital Foundation* (1984) 151 Cal.App.3d 1197, 1202 [199 Cal.Rptr. 338].) However, it must be remembered that license suspension, revocation or other similar disciplinary proceedings involving licensees are not for the purpose of punishment but primarily to protect the public served by the licensee employed by a hospital. (*Cipriotti* v. *Board of Directors* (1983) 147 Cal.App.3d 144, 157 [196 Cal.Rptr. 367].) Thus, so long as a fair hearing is provided, a hospital should not be hampered by formalities not required by its bylaws or by due process consider-

ations in disciplining or suspending those who do not meet its professional standards. (*Ibid.*) The concept of "fair procedure" does not require rigid adherence to any particular procedure, to bylaws or timetables. (*Tiholiz* v. *Northridge Hospital Foundation, supra*, 151 Cal.App.3d 1197, 1203.) At a minimum, however, fair procedure requires adequate notice of the administrative action proposed or taken by the group or institution and a reasonable opportunity to be heard. (*Id.* at p. 1202.) The fact that a suspension is imposed summarily does not in itself violate these fair procedure rights. (*Cipriotti* v. *Board of Directors, supra*, 147 Cal.App.3d 144.)

■ Petitioner does not contend that he has not received adequate notices of, or opportunities to be heard at, the various interviews and hearings held so far. Rather, he is asserting the administrative remedies are inadequate because there is no mechanism for an interim review of the claimed procedural deficiencies. However, case law interpreting the "fair procedure" requirement does not indicate the necessity for any such interim review procedure. Rather, the courts recognize they should not interfere with the hospital's disciplinary process so long as a fair hearing is provided. The fact petitioner is facing numerous charges of misconduct and claims procedural irregularities took place, does not warrant court intervention before the administrative proceedings are concluded.

■ One purpose for the exhaustion requirement is the promotion of judicial efficiency by unearthing the relevant evidence and providing a record which the court may review. (*Westlake Community Hosp.* v. *Superior Court* (1976) 17 Cal.3d 465, 476 [131 Cal.Rptr. 90, 551 P.2d 410].) ■ Since before petitioner's claimed procedural defects can be decided, factual disputes must be resolved, this purpose would be served by requiring petitioner to exhaust his administrative remedies. The other policy considerations which support the imposition of a general exhaustion requirement include giving the organization the opportunity to quickly determine that it has committed error and, recognizing the "expertise" of the organization's quasi-judicial tribunal, allowing it to adjudicate the merits of the individual's claim in the first place. (*Ibid.*) Permitting court review before a final administrative decision is rendered where, as here, the individual has been afforded notice and an opportunity to be heard and there is a mechanism for reviewing the claimed errors at the administrative level, could vitiate the exhaustion requirement. "If a party could obviate the exhaustion requirement simply by claiming that the hospital's action was improper, the doctrine would effectively be emasculated." (*Eidelson* v. *Archer* (Alaska 1982) 645 P.2d 171, 181.) Thus, the general rule that the organization's violation of its own rules does not furnish a right for direct resort to the courts should

apply here. (*Holderby* v. *Internat. Union etc. Engrs., supra*, 45 Cal.2d 843, 847.)

▮▮▮ Petitioner further claims he should be excused from exhausting his administrative remedies under the "futility" exception. However, futility is a narrow exception to the exhaustion doctrine. (*Sea & Sage Audubon Society, Inc.* v. *Planning Com., supra*, 34 Cal.3d 412, 418.) The exhaustion of remedial procedure is required unless " ' "the petitioner *can positively state* that the commission has declared *what its ruling will be in a particular case* . . . ." ' " (*Ibid.*)

Petitioner claims it would be futile to pursue his administrative remedies because the attorney for the executive committee has stated in his brief that "petitioner's procedural challenges are not well taken." Petitioner contends this statement also represents the position of the governing board of DMC. His argument is based on the governing board being listed as a real party in interest represented by the executive committee's counsel on the caption of the opposition to the petition for writ of mandate. However, this attorney has declared that he does not represent the governing board. The only direct communication from the governing board to petitioner is a letter written by a different attorney on behalf of the board. Under these circumstances, the link between the position of the executive committee's attorney and the position of the governing board is extremely tenuous. Further, this matter has not even been presented to the governing board for decision. Nevertheless, petitioner takes the position that, intuitively, it seems highly unlikely "after many wasted months of MRC hearings on the merits," the governing board might reject the executive committee's recommendation and sustain petitioner's procedural challenges after all.

However, petitioner has failed to produce any solid objective evidence to illustrate this claimed futility. "His own speculative, subjective feelings about the matter do not allow him to unilaterally ignore avenues of review. If that were the case, exhaustion would be a dead doctrine." (*Doyle* v. *City of Chino* (1981) 117 Cal.App.3d 673, 683 [172 Cal.Rptr. 844].)

Petitioner further asserts he should be excused from exhausting his administrative remedies because the procedural challenges can be decided as a matter of law. This is another facet of the futility doctrine. ▮▮▮ Where the administrative review will serve no purpose due to there being no need for the hearing officer to either decide disputed factual issues or furnish expertise essential for later judicial review, it is more efficient for the court to review the legal questions. (*Doster* v. *County of San Diego* (1988) 203

Cal.App.3d 257, 262 [251 Cal.Rptr. 507].) "The law does not require a party to participate in futile acts." (*Ibid.*)

 Here, however, every ground asserted by petitioner for relief requires resolution of disputed facts. Whether Dr. Shamp had authority to summarily suspend petitioner without the concurrence of the cochairman of the department is based on an interpretation of the bylaws. Although the interpretation of a writing is generally a question of law, extrinsic evidence is admissible to interpret the instrument. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) The parties disagree as to the meaning of the bylaws and have presented conflicting evidence to this court supporting their respective interpretations. However, no factual determinations have been made, and thus, this issue cannot be decided by this court as a matter of law.

Petitioner also contends the summary suspension was invalid on the ground that one of the requirements for such a suspension, the need for immediate action in the best interest of patient care, was not met. Petitioner also alleges the suspension was done in bad faith. However, these are challenges to the grounds for the suspension, not procedural challenges as asserted by petitioner. Similarly, petitioner's argument that the charges are invalid because the attorney usurped the executive committee's charging function involves factual disputes and thus cannot be decided as a matter of law.

In sum, because a final administrative decision has not been rendered, petitioner is not entitled to court review unless he comes within one of the exceptions to the exhaustion of administrative remedies doctrine. However, in this he fails. One of the grounds for appeal in the bylaws is the failure of either the executive committee or the medical review committee to comply with those bylaws. The claimed procedural invalidity is based on this ground. Further, the administrative remedies are adequate. The administrative body is capable of providing the relief sought, and petitioner has received both notice of the proceedings and an opportunity to respond. The absence of an interlocutory appeal process to review violations of the bylaws does not warrant court intervention. Finally, petitioner has not made a showing that proceeding with the administrative hearing would be futile. The governing board has not taken a position on petitioner's challenges, and the factual disputes prevent the resolution of these challenges as a matter of law.

The parties argue extensively as to whether petitioner's procedural objections "are well taken." However, as discussed above, none of these objections can be analyzed without factual findings being made. Thus, this court cannot review these issues in this proceeding.

The judgment is affirmed; the petition for writ of mandamus is denied. Costs to real parties in interest.

Martin, J., and Dibiaso, J., concurred.