[Nos. B093190, B095366. Second Dist., Div. Two. May 29, 1996.]

UNIVERSITY OF SOUTHERN CALIFORNIA et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
DOROTHY E. COMEAU, Real Party in Interest.

## COUNSEL

Thomas & Price, Michael Thomas, Greines, Martin, Stein & Richland, Marc J. Poster and Randel L. Ledesma for Petitioners.

No appearance for Respondent.

Gary I. Adler and William J. Genego for Real Party in Interest.

## OPINION

**ZEBROWSKI, J.**—This case involves a "Resident Evaluation Committee" which evaluates physician-residents enrolled in a postgraduate surgical training program. Evidence Code section 1157[1] generally exempts from discovery the proceedings and records of hospital quality evaluation committees or peer review committees. The issue in this case is whether section 1157 exempts from discovery the proceedings, written evaluations and related records of the Resident Evaluation Committee. The answer is yes.

Plaintiff Dorothy E. Comeau is a licensed physician. In 1992, she enrolled in a postgraduate surgical training program (the training program) at the University of Southern California Medical Center (Medical Center). The Medical Center is owned by the County of Los Angeles and operated by the county in conjunction with the University of Southern California (hereafter

---

[1]All further statutory references are to the Evidence Code unless otherwise stated.

collectively USC). As a surgical resident, Dr. Comeau was a temporary civil service employee of the county, and was assigned to the Medical Center pursuant to an annual "housestaff contract." In 1994, her contract was not renewed and she was dismissed from the training program. She sued, pleading breach of contract, wrongful termination and other theories. She contends she was disciplined without cause, harassed, discriminated against and libeled. She seeks, in addition to damages, reinstatement to the training program.[2]

In a series of discovery requests, Dr. Comeau requested discovery of the personnel files of other residents who were dismissed from the program, evaluations of other residents, complaints against other residents, records recording who voted not to renew her housestaff contract, the names of other residents placed on probation or suspended, statistical records, and related documents.[3] USC objected that the information sought was exempt from discovery pursuant to section 1157. Dr. Comeau moved to compel. Although the trial court implied an opinion that at least some of the information sought was within the scope of section 1157's discovery exemption, the trial court found it significant that section 1157 allows discovery of information sought by "any person . . . requesting hospital staff privileges." Concluding that Dr. Comeau's demand for reinstatement to the training program was analogous to a suit by a physician seeking staff privileges, the trial court ordered the discovery requested. These petitions for writs of mandate followed.

DISCUSSION

A. *The proceedings and records of the Resident Evaluation Committee are generally exempt from discovery.*

Section 1157 provides:

"(a) Neither the proceedings nor the records of organized committees of medical . . . staffs in hospitals, or of a peer review body, as defined in

[2]Although we suspect that successful pursuit of mandamus remedies in the trial court would be a prerequisite to a suit for damages in most analogous circumstances, we do not have a sufficient record before us to determine whether a petition for mandamus relief in the trial court was required in this case. We therefore approach and decide this case from the perspective of a situation not requiring pursuit of mandamus relief in the trial court.

[3]Dr. Comeau also requested production of records pertaining to her personally. Produced to her were documents evaluating or commenting upon her own personal performance (as opposed to the performance of other residents), correspondence pertaining to the nonrenewal of her housestaff contract, and a summary of her appeal to the surgery faculty. Records pertaining to Dr. Comeau personally appear implicated in this discovery dispute only to the extent that their production underlies Dr. Comeau's claim of waiver, which is discussed later in this opinion.

Section 805 of the Business and Professions Code,[4] having the responsibility of evaluation and improvement of the quality of care rendered in the hospital . . . shall be subject to discovery.

"(b) Except as hereinafter provided, no person in attendance at a meeting of any of those committees shall be required to testify as to what transpired at that meeting.

"(c) The prohibition relating to discovery or testimony does not apply to the statements made by any person in attendance at a meeting of any of those committees who is a party to an action or proceeding the subject matter of which was reviewed at that meeting, or to any person requesting hospital staff privileges, . . ."

Section 1157 was enacted in apparent response to *Kenney* v. *Superior Court* (1967) 255 Cal.App.2d 106 [63 Cal.Rptr. 84], in which a medical malpractice plaintiff was allowed to discover information in a hospital peer review committee's records. (*Matchett* v. *Superior Court* (1974) 40 Cal.App.3d 623, 629 [115 Cal.Rptr. 317].) ▆ Section 1157 "gives a blanket exclusion from discovery to proceedings and records of committees of hospital medical staffs concerned with evaluation and improvement of the quality of care in the hospital." (*Roseville Community Hospital* v. *Superior Court* (1977) 70 Cal.App.3d 809, 813 [139 Cal.Rptr. 170].) By enacting this discovery exemption, "[t]he Legislature intended . . . to encourage full and free discussions in the hospital committees in order to foster health care evaluation and improvement." (*Brown* v. *Superior Court* (1985) 168 Cal.App.3d 489, 501 [214 Cal.Rptr. 266].) Section 1157 also removes a disincentive to voluntary physician participation in peer review by exempting participating physicians from the burdens of discovery and involuntary testimony. (*West Covina Hospital* v. *Superior Court* (1986) 41 Cal.3d 846, 851-852 [226 Cal.Rptr. 132, 718 P.2d 119, 60 A.L.R.4th 1257].) Section 1157's promotion of peer review candor has a cost: a plaintiff is denied access to potentially relevant evidence. (*Matchett, supra,* 40 Cal.App.3d 623, 629.) Nevertheless, it is the judgment of the Legislature that societal interests are best served by exempting such information from discovery. (*West*

---

[4]Business and Professions Code section 805 defines "peer review body" to include any committee organized by any entity consisting of or employing more than 25 licentiates of the same class and which functions for the purpose of reviewing the quality of professional care provided by members or employees of that entity, the medical staff of any health care facility certified to participate in the federal medicare program as an ambulatory surgical center, etc. There appears to be no dispute here that the Resident Evaluation Committee qualifies either as a "peer review body" under the various definitions contained within section 805, or as an "organized committee[] of [a] medical . . . staff[]" in a hospital. (§ 1157, subd. (a).) Instead, the debate centers on whether there is an exception to the discovery exemption provided by section 1157 or whether the exemption has been "waived."

*Covina Hospital* v. *Superior Court* (1984) 153 Cal.App.3d 134, 138 [200 Cal.Rptr. 162].) It is not the judiciary's function to reorder competing societal interests which have already been ordered by the Legislature. (*California Eye Institute* v. *Superior Court* (1989) 215 Cal.App.3d 1477, 1486 [264 Cal.Rptr. 83].)

"[S]ection 1157 is an attempt to prevent a chilling effect on the accurate evaluation of health care facilities which would lead to a decline in the quality of health care in California. [¶] In balancing a plaintiff's concern in obtaining access to . . . committee records versus the public interest in a high-quality health care system, the Legislature drew a distinction between the rights of the individual, and the rights of the many. The confidentiality bestowed by section 1157, then, has its price: it denies a plaintiff access to information which could prevent her from recovering . . . . Yet it is clearly the judgment of the Legislature that this price is worth paying in order to protect the prospective health of the public as a whole." (*People* v. *Superior Court (Memorial Medical Center)* (1991) 234 Cal.App.3d 363, 373 [286 Cal.Rptr. 478].)

■ A committee evaluating resident surgical trainees at a teaching hospital is responsible for maintaining and improving the quality of care rendered at that hospital. The committee proceedings are therefore within the scope generally protected by section 1157, and the documents assembled for committee use are generally exempt from discovery. (See *Alexander* v. *Superior Court* (1993) 5 Cal.4th 1218 [23 Cal.Rptr.2d 397, 859 P.2d 96]; *Santa Rosa Memorial Hospital* v. *Superior Court* (1985) 174 Cal.App.3d 711 [220 Cal.Rptr. 236].)

B. *The "staff privileges" exception does not apply; the court may not create other exceptions by analogy.*

■ Dr. Comeau claims her suit for reinstatement to the training program comes within the "staff privileges" exception to section 1157's discovery exemption. The term "staff privileges" is broadly defined in Business and Professions Code section 805, subdivision (a)(4) as "any arrangement under which a licentiate is allowed to practice in or provide care for patients in a health facility," including various listed variations on staff privilege arrangements. An issue in this case thus is whether a resident in a surgical trainee program has "staff privileges" within the meaning of section 1157. So far as this record reflects, Dr. Comeau was not a physician with staff privileges to practice surgery at the Medical Center, but rather a postgraduate surgical

resident in training.[5] She was an employee and a student, but not a doctor practicing surgery. (*Ezekial* v. *Winkley* (1977) 20 Cal.3d 267, 282 [142 Cal.Rptr. 418, 572 P.2d 32]; Bus. & Prof. Code, § 2065.)[6] ■ " 'A staff physician treats *his* patients at the hospital. He has full authority to prescribe the patients' treatment, he is subject to no supervision during the course of treatment, and he generally bears full responsibility for negligence. The situation of the medical resident is entirely different. He treats his *employer's* patients, by assignment of his employer, subject to supervision by the hospital's chief of surgery, and because of the employer-employee relationship the hospital is liable for his negligence under accepted principles of respondeat superior.' " (*Marmion Mercy Hospital & Medical Center, supra,* 145 Cal.App.3d 72, 85, quoting *Ezekial, supra,* 20 Cal.3d 267, 283 (dis. opn. of Mosk, J.).)

Physicians seeking staff privileges are entitled to discovery notwithstanding the general discovery exemption of section 1157.[7] However, there is no exception applicable to a resident such as Dr. Comeau who seeks reinstatement to a postgraduate training program. ■ A court is not authorized to create an exception not contained in the statutory language. (See *In re Michael G.* (1988) 44 Cal.3d 283, 291 [243 Cal.Rptr. 224, 747 P.2d 1152] [citing the "familiar rule of construction, *expressio unius est exclusio alterius,* where exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed."]; *Stockton Theatres, Inc.* v. *Palermo* (1956) 47 Cal.2d 469, 476 [304 P.2d 7] [". . . a court is not authorized in the construction of a statute, to create exceptions not specifically made."].)

C. *The "statement by persons in attendance" exception does not apply.*

■ Nor does the "statements by persons in attendance" provision entitle Dr. Comeau to discovery. Dr. Comeau interprets this provision to allow discovery whenever suit is filed over some action of a committee such as the

---

[5]The record suggests that Dr. Comeau would not have been eligible to apply for surgical staff privileges until such time as she had successfully completed the postgraduate training program, and nothing contained within the record suggests that Dr. Comeau had been given some other form of staff privilege. (See *Marmion* v. *Mercy Hospital & Medical Center* (1983) 145 Cal.App.3d 72, 85-86 [193 Cal.Rptr. 225]; *Clarke* v. *Hoek* (1985) 174 Cal.App.3d 208, 211, fn. 1 [219 Cal.Rptr. 845]; Bus. & Prof. Code, § 2065.)

[6]Hospitals that have denied a physician staff privileges are required to report the denial to the Medical Board of California. (Bus. & Prof. Code, § 805 et seq.) There is no indication in the record that such a report was required when the "housestaff contract" pursuant to which Dr. Comeau was participating in the training program was not renewed.

[7]Although Dr. Comeau contends she seeks "reinstatement of her employment contract," her "employment" was contingent upon her remaining a resident in good standing in the surgical training program.

Resident Evaluation Committee. If that interpretation were the one intended by the Legislature, the exemption from discovery provided by section 1157 would have little or no meaning. It would not apply whenever suit is filed, which is the only situation in which discovery is available. For this reason, the court in *Schulz v. Superior Court* (1977) 66 Cal.App.3d 440, 446 [136 Cal.Rptr. 67] rejected such a broad interpretation: "The [statements by persons in attendance] exception created in section 1157 was designed to set aside the immunity and permit discovery in suits by doctors claiming wrongful or arbitrary exclusion from hospital staff privileges. It does not apply to a malpractice proceeding in which the doctor or the hospital have been made parties; such circumstances do not open to discovery hospital staff records containing medical committee investigation reports and peer appraisals." In reaching this decision, the *Schulz* court stated, "[t]o declare that the immunity is to be set aside when either the staff doctor or the hospital are parties to the malpractice proceeding would not only achieve an absurd result, but would render sterile the immunity provisions of the statute." (*Schulz, supra*, 66 Cal.App.3d 440, 445.)

Essentially the same language in a similar statute was interpreted by a New York court to apply to statements made about the lawsuit, not to statements previously made about matters which occurred before the lawsuit was filed. (*Parker v. St. Clare's Hosp.* (1990) 159 A.D.2d 919 [553 N.Y.S.2d 533].) In *Parker*, the plaintiff sued a doctor for surgical malpractice and the hospital for negligence in granting the doctor operating privileges. The plaintiff sought to discover the physician's applications for hospital privileges. The *Parker* court stated: "Plaintiff argues that, since her suit against the hospital is based upon its wrongful granting of privileges to [the defendant doctor], his applications for privileges were statements by a party to an action the subject matter of which was reviewed. We reject this overly broad interpretation of the statutory exception to nondisclosure. Under it, any action against a hospital for negligently permitting an incompetent physician to practice medicine in the hospital would give rise to disclosure of any and all statements discussing his qualifications made during peer review and, thus, the exception would swallow up the general rule of prohibition against disclosure and thereby defeat the purposes of [the statutory exemption]." (*Parker, supra*, 159 A.D.2d 919, 920-921 [553 N.Y.S.2d 533, 534].) Dr. Comeau claims that she was wrongfully eliminated from a postgraduate training program and that, as a result, her temporary employment contract was not renewed. She argues that since she now has a suit pending, the statements previously made by those who evaluated her performance in the training program are "statements by a party to an action the subject matter of which was reviewed." Like the *Parker* court, we conclude that this interpretation of the statutory exception to nondisclosure is overly broad. If it were

correct, any action against a hospital would support an order to disclose all peer review and quality control records regarding the relevant committee's presuit quality control efforts. If section 1157 were so interpreted, discovery would be allowed in virtually any situation in which suit has been filed. The exception would then swallow the rule. (Cf. *Outboard Marine Corp.* v. *Superior Court* (1975) 52 Cal.App.3d 30, 36 [124 Cal.Rptr. 852] [when statute subject to two constructions, one leading to absurdity, absurd construction must not be chosen].)

D. *No "waiver" of section 1157's discovery exemption has been shown.*

Dr. Comeau requested, and USC produced, certain records pertaining to her personally.[8] Dr. Comeau contends that by producing records relating to her personally USC waived the discovery exemption in section 1157. The authorities regarding evidentiary privileges cited by Dr. Comeau, however, are not applicable. "Privileges" are covered by division 8 of the Evidence Code, which contains familiar section 912 regarding waiver of privilege. Section 1157, by contrast, is contained in division 9, "Evidence Affected or Excluded by Extrinsic Policies." It is true that some decisions use the word "privilege" to describe the exemption from discovery set forth in section 1157. (See, e.g., *Alexander* v. *Superior Court, supra,* 5 Cal.4th 1218, 1223-1224, fn. 4.) However, section 1157 clearly does not create a "privilege" as that term is used in division 8 of the Evidence Code. Section 912's privilege waiver provisions therefore do not apply to section 1157's discovery exemption.

Assuming that a waiver doctrine of some kind does apply, that doctrine would have to account in some manner for all those who are protected by the discovery exemption of section 1157. The discovery Dr. Comeau has requested would necessarily involve many committee members, physician reviewers, resident surgical trainees who were reviewed, etc. Dr. Comeau has not shown that these individuals have waived the discovery exemption of section 1157.

DISPOSITION

In view of the trial court's conclusion that section 1157 did not exempt any of the requested information from discovery, the trial court did not make any specific determination of what portion of the requested discovery falls within the exemption of section 1157. We therefore remand for consideration of what part, if not all, of Dr. Comeau's requested discovery is

---

[8]See footnote 3, *ante,* page 1287.

exempted from discovery by section 1157. (See *Willits* v. *Superior Court* (1993) 20 Cal.App.4th 90, 104-105 [24 Cal.Rptr.2d 348].)

Let a peremptory writ of mandate issue directing the superior court to vacate its orders of April 4, May 19, and August 1, 1995, and to modify its orders regarding Dr. Comeau's discovery motions consistent with this decision. To the extent the trial court finds that the requested discovery seeks the proceedings or records of the Resident Evaluation Committee, the requested discovery shall be denied. The temporary stay is vacated.

Boren, P. J., and Nott, J., concurred.