[No. A080309. First Dist., Div. Two. Dec. 4, 1998.]

MANNIE JOEL et al., Plaintiffs and Appellants, v.
VALLEY SURGICAL CENTER et al., Defendants and Respondents.

**COUNSEL**

Daniel U. Smith, Bokelman & Benjamin, Robert U. Bokelman, Anglia Benjamin and Amy Leonard for Plaintiffs and Appellants.

Hanson, Bridgett, Marcus, Vlahos & Rudy, James A. Napoli and Steven V. Schnier for Defendants and Respondents.

## Opinion

### RUVOLO, J.—

#### I.

### INTRODUCTION

Appellants Mannie Joel, M.D., and his medical corporation (Dr. Joel)[1] appeal the dismissal by demurrer of their case against Valley Surgical Center and individual defendants (ValleyCare). The trial court sustained Valley-Care's demurrer to the entire first amended complaint based on Dr. Joel's failure to exhaust administrative remedies allegedly available under his contract with ValleyCare and applicable medical staff bylaws. The trial court also sustained a demurrer to the third cause of action for defamation, finding this claim was additionally barred by various privileges, specifically Business and Professions Code section 805 and Civil Code section 47. We reverse the trial court's ruling as to the demurrer to the entire first amended complaint, but affirm the demurrer to the third cause of action.

#### II.

### BACKGROUND

On November 8, 1995, Dr. Joel was preparing to treat one of his patients at Valley Surgical Center after administering an anesthetic pain block. Although Dr. Joel believed he had obtained ValleyCare's permission to administer the anesthesia and to perform the procedure, ValleyCare disagreed and informed Dr. Joel that if he continued, ValleyCare would summarily suspend his privileges. Therefore, Dr. Joel discontinued the procedure, which was later performed at a different health care facility.

The next day, ValleyCare wrote Dr. Joel informing him that his privileges had been summarily suspended pursuant to "Article VI, Section 2 of the Medical Staff Bylaws"[2] for attempting to provide services without proper authorization. In its notification, ValleyCare offered to convene a medical staff executive committee meeting with Dr. Joel to discuss his suspension. A request for such a meeting was made by Dr. Joel on November 8.

Following the meeting, which was held on November 14, 1995, Dr. Joel was advised by letter dated November 21, 1995, that the executive committee reaffirmed the decision to suspend his privileges for the reasons originally asserted. The notification advised Dr. Joel concerning his right to

---

[1]Because we refer to appellants collectively as Dr. Joel, we will use singular verb forms and the masculine pronoun throughout the opinion.

[2]The record below does not include a complete copy of the referenced bylaws.

request a hearing before ValleyCare's judicial review committee, pursuant to "Article VII" of the bylaws. On December 5, 1995, Dr. Joel requested such a hearing.

Because Dr. Joel's suspension lasted for more than 14 days, ValleyCare reported it to the Medical Board of California as required by California law. (Bus. & Prof. Code, § 805.) After 30 days had passed, ValleyCare was required to report the suspension to the National Practitioner Data Bank, and did so. (42 U.S.C. § 11133; 45 C.F.R. § 60.5(c) (1997).)

On February 2, 1996, ValleyCare sent Dr. Joel a written "notice of charges" against him and scheduled a hearing for February 29, 1996. Before the hearing took place, however, the parties elected to settle the dispute concerning the suspension of Dr. Joel's privileges. The settlement was memorialized in a letter from ValleyCare's counsel dated February 22, 1996. The agreement confirmed that the suspension would immediately end, and Dr. Joel's privileges would be reinstated "without limitation or restriction," provided that Dr. Joel withdraw his request for an administrative hearing. The parties agreed: "The summary suspension of Dr. Joel's privileges would be ended immediately conditioned upon Dr. Joel immediately thereafter withdrawing his pending request for a hearing with respect thereto."

The agreement also stated: "This settlement of the privileges dispute regarding the summary suspension has no legal effect on any other matter or any damages claim resulting from the summary suspension. Accordingly, nothing in this settlement or agreement releases either party from any claim or action which might otherwise exist or relieves any party from any legal obligation to satisfy or complete any action or proceeding as a precedent to asserting any claim."

Both parties were represented by counsel through the entire settlement process. On February 23, 1996, counsel for Dr. Joel wrote to ValleyCare's counsel accepting the terms of the settlement agreement as stated in Valley-Care's February 22 letter.

On February 4, 1997, Dr. Joel filed his first amended complaint, alleging in four causes of action claims of unfair business practices, intentional interference with economic relationship, defamation, and intentional infliction of emotional distress. ValleyCare demurred to the entire complaint on the grounds that Dr. Joel had failed to exhaust his administrative remedies. ValleyCare also demurred to Dr. Joel's claim of defamation, stating that the reports to the Medical Board of California and the National Practitioner Data Bank were privileged communications under Business and Professions Code section 805, subdivision (f) and Civil Code section 47.

On June 12, 1997, the trial court sustained the demurrer on both grounds. Thereafter, Dr. Joel filed a motion for new trial, which was denied by the court on September 3, 1997. Dr. Joel noticed this timely appeal.

## III.

### DISCUSSION

#### A. *Exhaustion of Administrative Remedies*

█ It is a general and well-established rule that a plaintiff cannot seek judicial review of a grievance against an organization of which the plaintiff is a member without first exhausting the administrative remedies provided by that organization. (*Westlake Community Hosp.* v. *Superior Court* (1976) 17 Cal.3d 465, 474-475 [131 Cal.Rptr. 90, 551 P.2d 410].) █ Valley-Care contends that, because an administrative hearing did not take place, Dr. Joel is legally barred from prosecuting a complaint for civil damages allegedly resulting from his suspension unless his claim comes within one of the exceptions to the exhaustion doctrine. (*Bollengier* v. *Doctors Medical Center* (1990) 222 Cal.App.3d 1115, 1131 [272 Cal.Rptr. 273].)

The record below does not contain a complete copy of the bylaws which govern the parties' administrative rights. After this appeal became fully briefed, the parties were provided a further opportunity to address specifically whether the "Medical Staff Bylaws," in which the administrative procedures apparently are delineated, provided an administrative remedy for civil damages resulting from an erroneous or wrongful suspension of a staff member's hospital privileges. If damages were not available, the parties were invited to supplement their briefs addressing the import, if any, of this limitation.

In supplemental briefing, the parties agree that Dr. Joel did not have an administrative right to seek damages under the bylaws and that the administrative hearing afforded staff members was limited to contesting the suspension of hospital privileges. Therefore, the state of the record before us reflects that the administrative procedure encompassed only the propriety of Dr. Joel's suspension and did not encompass consequential damages which might have resulted from the suspension. However, the parties disagree on how this limitation should effect the applicability of the exhaustion doctrine.

ValleyCare claims *Westlake Community Hosp.* v. *Superior Court, supra,* 17 Cal.3d 465, is dispositive and precludes Dr. Joel from pursuing this action. In *Westlake,* a physician whose hospital privileges were revoked brought a

tort action against the hospital before seeking judicial review by mandamus to compel her readmission. The complaint alleged that her privileges were revoked as part of "a malicious conspiracy, engineered by all of the named defendants in order to destroy [her] medical practice." (*Id.* at p. 470.) The California Supreme Court analogized the doctor's suit to an action for malicious prosecution and reasoned that because the claim was "necessarily premised on an assertion that the hospital's decision to revoke plaintiff's privileges was itself erroneous and unjustified," she was required to obtain a judicial vindication of her position before proceeding with a civil action for damages. (*Id.* at p. 484.) The court held, "[O]nce a court determines in a mandamus proceeding that an association's quasi-judicial decision cannot stand, either because of a substantive or procedural defect, the prevailing party is entitled to initiate a tort action . . . ." (*Ibid.*)

The *Westlake* court pointed out that if an internal administrative remedy had been provided by the hospital for challenging the plaintiff's suspension, the plaintiff would have been required to exhaust it before suing the hospital for damages, even though damages were unavailable administratively. (17 Cal.3d at pp. 475-476.) The court determined that there were important policy considerations underlying the exhaustion doctrine which justified extending the requirement to related common law claims, such as a claim for damages, even if the organization's internal review procedures generally did not provide a damage remedy. (*Id.* at p. 476.) The court set forth at length the purposes that would be served by applying the exhaustion doctrine in this context: "In the first place, even if a plaintiff no longer wishes to be either reinstated or admitted to the organization, an exhaustion of remedies requirement serves the salutary function of eliminating or mitigating damages. If an organization is given the opportunity quickly to determine through the operation of its internal procedures that it has committed error, it may be able to minimize, and sometimes eliminate, any monetary injury to the plaintiff by immediately reversing its initial decision and affording the aggrieved party all membership rights; . . . [¶] Moreover, by insisting upon exhaustion even in these circumstances, courts accord recognition to the 'expertise' of the organization's quasi-judicial tribunal, permitting it to adjudicate the merits of the plaintiff's claim in the first instance. [Citation.] Finally, even if the absence of an internal damage remedy makes ultimate resort to the courts inevitable [citation], the prior administrative proceeding will still promote judicial efficiency by unearthing the relevant evidence and by providing a record which the court may review." (*Ibid.*)

We conclude that none of the policies underlying the *Westlake* decision are furthered under the facts here, and thus, the decision is inapplicable where the administrative machinery has been commenced, but the parties

resolve the dispute before its completion through settlement which awards the physician the maximum benefit he or she could have been afforded administratively. Initially we note it is significant that *Westlake* on its facts manifestly did not involve a settlement of an administrative dispute, nor did it address these circumstances.

The parties' settlement here satisfies all three principal concerns found important to the *Westlake* court in requiring administrative exhaustion as a prelude to an action for damages. First, by agreeing to reinstate Dr. Joel, ValleyCare mitigated any damages to Dr. Joel occasioned by the suspension. Had the parties not settled and had Dr. Joel been successful in achieving through a hearing what he was able to obtain through settlement, damages resulting from the suspension would arguably be greater, if for no other reason than the period of suspension would have been longer.

Second, the relief obtained by Dr. Joel through settlement was not a partial or conditional reinstatement, but was the maximum relief he could have achieved administratively. Certainly, unconditional reinstatement would not have been agreed to without a reflective and experienced analysis by ValleyCare as to whether the decision to suspend was well advised in the first place, and perhaps more importantly, whether reinstatement constituted a future risk to the patients of ValleyCare. Implicit in the decision to reinstate is that ValleyCare addressed and evaluated the merits of reinstatement as it related to the future quality of patient care, thus bringing to bear the "expertise" of ValleyCare's administrators on the dispute.

In addressing the third factor examined by the *Westlake* court, namely, the potential for the administrative proceeding to unearth evidence and to produce a record which might be of use to the court in a subsequent lawsuit, neither party mentions the effect of Evidence Code section 1157 on this consideration. That section provides the records of hospital staff committees responsible for evaluating care rendered by staff physicians are generally immune from discovery.[3] ■ "By enacting this discovery exemption, '[t]he Legislature intended . . . to encourage full and free discussions in the hospital committees in order to foster health care evaluation and improvement.' [Citation.] Section 1157 also removes a disincentive to voluntary

___

[3] *Evidence Code section 1157 provides:* "(a) Neither the proceedings nor the records of organized committees of medical, medical-dental, podiatric, registered dietitian, psychological, or veterinary staffs in hospitals, or of a peer review body, as defined in Section 805 of the Business and Professions Code, having the responsibility of evaluation and improvement of the quality of care rendered in the hospital, or for that peer review body, or medical or dental review or dental hygienist review or chiropractic review or podiatric review or registered dietitian review or veterinary review or acupuncturist review committees of local medical, dental, dental hygienist, podiatric, dietetic, veterinary, acupuncture, or chiropractic societies, or psychological review committees of state or local psychological associations or societies

physician participation in peer review by exempting participating physicians from the burdens of discovery and involuntary testimony. [Citation.]" (*University of Southern California* v. *Superior Court* (1996) 45 Cal.App.4th 1283, 1288 [53 Cal.Rptr.2d 260].)

 The precise question of whether evidence adduced during an administrative hearing to reinstate a physician's privileges is subject to involuntary disclosure in a civil action seeking damages resulting from the suspension was addressed in *California Eye Institute* v. *Superior Court* (1989) 215 Cal.App.3d 1477 [264 Cal.Rptr. 83]. In that case, an ophthalmologist sought damages allegedly resulting from the wrongful restriction of his staff privileges. In the course of the litigation, the ophthalmologist sought to discover the records of the hospital relating to the imposition of restrictions on his privileges and the subsequent administrative decision to remove them. Citing "the strong public policy frequently expressed favoring confidentiality of peer review committee proceedings" underlying Evidence Code section 1157, the court determined that the parties were barred from discovering the administrative records. (215 Cal.App.3d at p. 1482.) The court reasoned: "Candid and frank participation in peer review proceedings is encouraged by assuring peer review activities will not be put to adverse use in a damage action. Participation in peer review would be inhibited if a committee member's comments could be discovered in a damage action against a committee member or others." (*Id.* at p. 1484.) Thus, even if the peer review process "unearth[ed] the relevant evidence," Dr. Joel would not be entitled to discovery of any of the documents in his action for damages. (*Westlake Community Hosp.* v. *Superior Court, supra,* 17 Cal.3d at p. 476.) Therefore, *Westlake* is factually inapposite and its rationale supporting exhaustion through appropriate review procedures before bringing a suit for damages is inapplicable to the circumstances presented here.

---

having the responsibility of evaluation and improvement of the quality of care, shall be subject to discovery.

"(b) Except as hereinafter provided, no person in attendance at a meeting of any of those committees shall be required to testify as to what transpired at that meeting.

"(c) The prohibition relating to discovery or testimony does not apply to the statements made by any person in attendance at a meeting of any of those committees who is a party to an action or proceeding the subject matter of which was reviewed at that meeting, or to any person requesting hospital staff privileges, or in any action against an insurance carrier alleging bad faith by the carrier in refusing to accept a settlement offer within the policy limits. . . ."

Business and Professions Code section 805 defines "peer review body" to include any committee organized by any entity consisting of or employing more than 25 licentiates of the same class and which functions for the purpose of reviewing the quality of professional care provided by members or employees of that entity, the medical staff of any health care facility certified to participate in the federal Medicare program as an ambulatory surgical center, etc. ValleyCare concedes in its brief that it is an organization defined within Business and Professions Code section 805.

Furthermore, we do not see any judicial efficiency to be gained in compelling parties to litigate issues when they would rather avoid the time, money, and uncertainty of an administrative hearing by settling their dispute. Indeed, acceptance of ValleyCare's argument would indubitably frustrate the strong public policy of this state promoting settlements of civil disputes. (*Villa* v. *Cole* (1992) 4 Cal.App.4th 1327 [6 Cal.Rptr.2d 644].) The courts are empowered to encourage settlements, thereby discouraging needless litigation and its attendant expense. (*Nicholson* v. *Barab* (1991) 233 Cal.App.3d 1671 [285 Cal.Rptr. 441].)

Yet ValleyCare argues that allowing Dr. Joel's damages action to proceed would inhibit settlements of medical review committee proceedings. Implicit in this argument is the assumption that medical care institutions will not settle administrative claims if the institutions are exposed to claims for collateral damages arising from perhaps improvident suspensions. First, we do not accept the premise that a medical care facility would choose to continue administrative proceedings evaluating and reviewing a questionable administrative decision rather than dealing with the issue of staff competency on its merits. We reject as unfounded the necessary inference from ValleyCare's argument that facility administrators might be motivated to resist reinstatement of deserving and productive staff because of an irrelevant concern that to do so might result in a claim for damages. It implies that the reviewing body would base staffing decisions on irrelevant factors and not matters affecting the best interests of the institution's patients, an assumption we are unwilling to accept.

In the final analysis, we agree with Dr. Joel's argument that he should be excused from the exhaustion of administrative remedies doctrine because further pursuit of administrative remedies in this case would have been futile. (*Bollengier* v. *Doctors Medical Center, supra,* 222 Cal.App.3d at p. 1126 [exhaustion of administrative remedies excused where resort to administrative proceedings would be futile].) Dr. Joel argues that further pursuit of an administrative hearing was rendered futile by the settlement agreement because the administrative process had nothing more to offer, and that the settlement gave him everything the administrative hearing could have provided—namely, the full reinstatement of all his privileges.

In support of his claim of futility, Dr. Joel cites *Grant* v. *Board of Medical Examiners* (1965) 232 Cal.App.2d 820 [43 Cal.Rptr. 270]. In *Grant,* a physician faced disciplinary proceedings by the California Board of Medical Examiners. After a hearing took place, the hearing officer proposed an order stating that the accusation and proceedings be dismissed. This proposed decision was adopted by the board. (*Id.* at pp. 824-825.) Grant then filed a

writ of mandate in superior court challenging the administrative action. The trial court dismissed the writ, a decision this appellate district affirmed. (*Id.* at pp. 825-826.) Division One of this district stated that a party cannot appeal from a judgment which is entirely in his favor. (*Id.* at p. 827.) "It is difficult to conceive how appellant's action below could have secured more beneficial results for him." (*Id.* at p. 828.) Dr. Joel claims that under the court's reasoning in *Grant*, he had no reason to pursue further administrative remedies because ValleyCare agreed to fully reinstate Dr. Joel's privileges—an outcome favorable to him.

Further on this point, we find instructive the subsequent decision to *Westlake* rendered in *Knickerbocker* v. *City of Stockton* (1988) 199 Cal.App.3d 235 [244 Cal.Rptr. 764] (*Knickerbocker*). In *Knickerbocker*, a police lieutenant was discharged, and in the ensuing police commission hearing, the commission found grounds for discipline but ruled the termination was improper and ordered the police officer reinstated, albeit at a demoted rank. He did not seek judicial review by administrative mandamus under Code of Civil Procedure section 1094.5, but instead brought a tort action seeking damages for wrongful termination and intentional infliction of emotional distress. The trial court sustained a general demurrer to the entire complaint.

The Court of Appeal reversed. The court first noted the confusion into which courts have frequently fallen by mislabeling a writ of administrative mandamus as an administrative remedy when it is in fact a judicial one.[4] (*Knickerbocker, supra,* 199 Cal.App.3d at pp. 241-242.) While the court found the failure to seek judicial review of plaintiff's demotion precluded a civil action contesting that action, no similar bar existed to plaintiff's claim for damages resulting from the termination. The court explained, "Although the defendant city and its employees had grounds for demoting plaintiff, the Commission did not find they had grounds to fire him. Thus, to the extent that plaintiff can prove that he suffered emotional distress from the improper firing as distinguished from that related to his proper demotion, nothing in the prior adjudication prevents him from doing so." (*Id.* at p. 245.) Therefore, the court reversed the trial court's sustaining of the demurrer to a cause of action seeking tort damages resulting from the termination which had been determined in plaintiff's favor. (*Id.* at pp. 245-246; see also *Swartzendruber* v. *City of San Diego* (1992) 3 Cal.App.4th 896 [5 Cal.Rptr.2d 64].)

___

[4]The *Knickerbocker* court stated, "Exhaustion of judicial relief simply means that if [the aggrieved party] wishes to attack the administrative determination he must launch that assault in an administrative mandamus proceeding and not in a lawsuit for damages." (199 Cal.App.3d at p. 244.) There is no claim here by ValleyCare that Dr. Joel failed to exhaust *judicial* remedies. Indeed, the very purpose of settling the dispute over the suspension of privileges was to avoid further proceedings relating to that matter.

Having prevailed administratively, it would be no less a futile act for Dr. Joel to be required to proceed with a hearing before the ValleyCare committee than it was for the plaintiff in *Knickerbocker* to have brought an action seeking administrative mandamus after achieving a successful result before the police commission.

Lastly, ValleyCare's arguments necessarily insinuate that Dr. Joel's damages claims were settled as part of the administrative disposition of his suspension of privileges. The implication is that the elimination of his right to an administrative hearing in return for a reinstatement of his privileges constitutes a waiver or release of the tort claims brought below. We disagree that such an inference can even plausibly be drawn from these circumstances. As noted, the language of the parties' settlement agreement is explicit in this regard: "This settlement of the privileges dispute regarding the summary suspension has no legal effect on any other matter or any damages claim resulting from the summary suspension. Accordingly, nothing in this settlement or agreement releases either party from any claim or action which might otherwise exist or relieves any party from any legal obligation to satisfy or complete any action or proceeding as a precedent to asserting any claim." If ValleyCare intended to encompass Dr. Joel's damages claim as part of their settlement, it would have been better served to do so directly, rather than rely on the fragile and unconvincing procedural argument it makes in this appeal to effectively cut off this claim.

Accordingly, we conclude the trial court erred in sustaining ValleyCare's demurrer to the entire complaint on the single ground asserted. We next turn to Dr. Joel's contention that the demurrer only to the third cause of action was likewise error.

B. *Privilege Claims to Defamation Cause of Action*

During the period of Dr. Joel's suspension ValleyCare reported its action to the Medical Board of California and National Practitioner Data Bank. Both reports were required by law. (Bus. & Prof. Code, § 805; 42 U.S.C. § 11133; 45 C.F.R. § 60.5(c) (1997).) Dr. Joel's first amended complaint includes as his third cause of action for common law defamation. ValleyCare demurred to this cause of action, claiming its reporting was privileged under Business and Professions Code section 805, subdivision (f) and Civil Code section 47. The demurrer was sustained.

Dr. Joel contends it was error to sustain the demurrer on these grounds since 1) he complains in his cause of action of "conduct" which is outside

the purview of the privileges, 2) the reports were not made for a "medical disciplinary cause or reason," 3) some communications with other individuals at ValleyCare were not privileged, and 4) the federal reporting was malicious. We reject these arguments and affirm the sustaining of this demurrer.

Dr. Joel's first point is specious. A cause of action for defamation challenges communications and not "conduct." The two forms of defamation are slander or libel. (Civ. Code, § 44.) Slander requires an "oral[] utter-[ance]" (Civ. Code, § 46); libel requires a "publication" (Civ. Code, § 45). Therefore, Dr. Joel's claim of defamation emanates from a communication of the reports to these regulatory bodies, and thus falls squarely within the privileges asserted. Furthermore, Dr. Joel concedes that the privileges apply to ValleyCare's communications with the Medical Board of California.[5]

Similarly, we conclude the report to the National Practitioner Data Bank was absolutely privileged under Civil Code section 47. (See *Long* v. *Pinto* (1981) 126 Cal.App.3d 946, 948 [179 Cal.Rptr. 182] [communication with an official agency designed to prompt investigation by that agency is absolutely privileged].) Dr. Joel does not contend that the reporting was not required by law, or that the report was not facially truthful, e.g., that he actually had his privileges suspended by ValleyCare. Instead, he contends the suspension was not effected in a good faith belief that he engaged in an unauthorized medical procedure warranting the action taken. This is precisely the argument made by plaintiff in *Long* which was rejected. The court found that protecting such communications against defamation actions is necessary to accomplish the strong policy goal of maintaining a high quality of professional medical care. (*Id.* at p. 951.) Therefore, even if Dr. Joel was able to prove ValleyCare's report to this agency was improperly motivated, the communication is still entitled to absolute immunity. (Accord, *Dorn* v. *Mendelzon* (1987) 196 Cal.App.3d 933, 941-943 [242 Cal.Rptr. 259].)

IV.

DISPOSITION

The order sustaining ValleyCare's demurrer to the entire first amended complaint and the judgment are hereby reversed. The order sustaining

---

[5]A review of Dr. Joel's claims, including the incorporated general allegations, reveals that his allegations concern the reporting of his suspension to the two regulatory bodies. No publications or utterances are alleged as to "other" persons or entities.

ValleyCare's demurrer to the third cause of action is affirmed. Dr. Joel is awarded his costs on appeal. ValleyCare to bear its own costs.

Kline, P. J., and Haerle, J., concurred.