Filed 9/17/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| DIGNITY HEALTH,<br><br>Plaintiff, Cross-defendant and Respondent,<br><br>v.<br><br>TROY I. MOUNTS et al.,<br><br>Defendants, Cross-complainants and Appellants. | 2d Civ. No. B325563<br>(Consl. w/B330787)<br>(Super. Ct. No. 17CV-0592)<br>(San Luis Obispo County) |

Respondent Dignity Health dba French Hospital Medical Center ("Dignity") filed its complaint against Troy I. Mounts, M.D. and Troy I. Mounts, M.D., Inc., (collectively "appellant") an orthopedic surgeon, to recover an advance paid to appellant under their Physician Recruitment Agreement. Appellant filed a cross-complaint alleging Dignity retaliated against him for complaining about the quality of patient care, interfered with his prospective economic opportunities and

engaged in unlawful business practices. Dignity filed an anti-SLAPP motion to strike the cross-complaint. (Code Civ. Proc., § 425.16.) The trial court denied that motion. In an unpublished opinion, we reversed the trial court's order. We remanded the matter for the trial court to determine whether appellant had demonstrated a probability of prevailing on the merits of his claim. (*Id.*, subd. (b)(1); *Dignity Health v. Appellant* (Feb. 23, 2022, B289209).)

The trial court concluded appellant had not demonstrated a probability of prevailing because Dignity's actions were subject to the litigation privilege (Civ. Code, § 47, subdivision (b)),[1] the common interest privilege (*id.*, subd. (c)), and barred by the statute of limitations. It therefore granted the motion to strike appellant's cross-complaint and ordered him to pay Dignity's attorney fees and costs. Appellant contends the trial court erred. We affirm.

*Facts*

Dignity hired appellant, an orthopedic surgeon, to work in a spine surgery practice at the San Luis Obispo French Hospital Center. Dignity contends that concerns regarding appellant's clinical competence arose almost immediately. At the same time, appellant complained that he was not getting staff support or adequate time in the operating room to perform complex surgeries. Dignity put appellant's complex surgeries "on hold" and required him to complete a previously scheduled surgery with a second surgeon he had not worked with before.

Disputes regarding appellant's practice continued. In December 2015, Dignity's Chief of the Medical Staff, Chief of

---

[1] All statutory references are to the Civil Code unless otherwise stated.

Anesthesiology, Vice President of Medical Affairs and the Chair of the Surgery Department requested that appellant refrain from operating until they completed a Focused Professional Practitioner Evaluation (FPPE) review.  Appellant agreed to this restriction.  Two days later, Dignity's Medical Executive Committee ("MEC") sent appellant a letter notifying him that Dignity would be required to submit a report to the Medical Board of California under Business & Professions Code section 805 ("805 Report") if the voluntary restriction of privileges lasted longer than 30 days.  When appellant attempted to rescind his voluntary restriction of privileges, the Chief of Staff responded that he could do so, but Dignity could respond by summarily suspending his privileges.  A suspension that lasted longer than 14 days would also require an 805 Report.

By the time appellant's attorney notified Dignity that he wanted to lift his voluntary restriction, it had already lasted 30 days.  Dignity filed an 805 Report with the Medical Board and a report with the National Practitioner Data Bank (NPDB).  The NPDB report stated that the "basis for action" was "IMMEDIATE THREAT TO THE HEALTH OR SAFETY."[2]  (Capitalization added.)

About two weeks later, Dignity's MEC sent appellant a memorandum regarding the ongoing peer review investigation.  Appellant submitted a rebuttal statement.  At the FPPE meeting,

_____

[2] Appellant requested that the Department of Health & Human Services review the NPDB report.  Without reviewing the merits of Dignity's actions, the Department concluded that Dignity's actions were "reportable under applicable law and regulations" and that the report "accurately describe[ed] [Dignity's] action and reasons for action . . . ."

3

no one acknowledged appellant's rebuttal statement. He characterizes the meeting as focusing on issues not previously raised with him.

After the meeting, the hospital chief of staff called appellant to advise him that, although nothing was final yet, the committee's decision was probably not going to be favorable to appellant. He encouraged appellant to resign his position. Appellant resigned on February 10, 2016.

Appellant subsequently lost privileges at two hospitals in California. He was considered for employment at a hospital in Montana and another in Tennessee. Dignity declined to provide records relating to the FPPE to either entity. Appellant contends he lost both employment opportunities because of Dignity's refusal and the NPDB report.[3]

*Procedural History*

Dignity sued appellant to recover a recruiting bonus it had paid to him. Appellant filed a cross-complaint alleging retaliation in violation of Health & Safety Code section 1278.5, intentional interference with prospective economic advantage and unfair competition in violation of Business & Professions Code, section 17200.

Dignity filed an anti-SLAPP motion to strike the cross-complaint. The trial court denied the motion because it concluded appellant's retaliation claim arose out of Dignity's "retaliatory purpose" rather than its protected peer review activity. In an unpublished opinion, we reversed the trial court's

---

[3] In 2022, the Medical Board of California brought an accusation against appellant relating to his treatment of three patients in 2018 and 2019, after he resigned from Dignity. The Medical Board withdrew the accusation in 2023.

order.  We remanded the matter to permit the trial court to determine whether appellant had demonstrated a probability of prevailing on the merits of his claim.

On remand, the trial court granted the motion to strike, concluding that all of appellant's claims were based on conduct protected by the litigation privilege (§ 47, subd. (b)), the common interest privilege (*id*., subd. (c)), reporting for which Dignity is immune under federal law (42 U.S.C. § 11137), or acts that are outside the one-year statute of limitations.  (Code Civ. Proc., § 340.)  Appellant contends the trial court erred because it viewed the evidence in the light most favorable to Dignity, failed to consider each individual basis for the retaliation claim, failed to consider the continuing violation doctrine as an exception to the statute of limitations defense, and misunderstood the basis for his intentional interference with prospective economic advantage claim.  We affirm.

*Standard of Review*

The anti-SLAPP statute authorizes a special motion to strike a claim "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue . . . ."  (Code Civ. Proc., § 425.16, subd. (b)(1).)  Deciding whether to grant an anti-SLAPP motion to strike requires the court to conduct a two-step inquiry.  At the first step, the moving defendant has the burden to establish that the claims alleged against it "arise from" one or more of the statutorily defined categories of protected activity.  (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni I*), Code Civ. Proc., § 425.16, subd. (e)(1)-(4).)

5

At the second step, the burden shifts to the plaintiff to demonstrate "a probability that [he or] she would prevail on the particular claim. . . . 'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."'" (*Taus v. Loftus* (2007) 40 Cal.4th 683, 713-714.) This burden includes defeating any legal defense raised by the defendant. (*Curtin Maritime Corp. v. Pacific Dredge & Construction, LLC* (2022) 76 Cal.App.5th 651, 668; *RGC Gaslamp, LLC v. Ehmcke Sheet Metal Co., Inc.* (2020) 56 Cal.App.5th 413, 434.)

In conducting this inquiry, the court does not weigh evidence or resolve conflicting factual claims. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.) The court "accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law." (*Id.* at p. 385.) Claims that have "minimal merit may proceed." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 94.) We review de novo the trial court's decision to grant an anti-SLAPP motion. (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788.)

*Discussion*

Retaliation. Appellant's cross-complaint alleges that he complained to Dignity about his access to operating rooms, lack of competent operating room staff and lack of qualified assistant surgeons. He alleges that Dignity then retaliated against him for raising these concerns.

Health & Safety Code section 1278.5 provides, "A health facility shall not discriminate or retaliate, in any manner,

6

against a patient, employee, member of the medical staff, or other health care worker of the health facility because that person has . . . (A) Presented a grievance, complaint, or report to the facility, to an entity or agency responsible for accrediting or evaluating the facility, or the medical staff of the facility, or to any other governmental entity." (*Id.,* subd. (b)(1)(A).) A prima facie case under this statute requires the plaintiff to show that he or she "(1) presented a grievance, complaint, or report to the hospital or medical staff (2) regarding the quality of patient care and (3) the hospital retaliated against him or her for doing so." (*Alborzi v. University of Southern California* (2020) 55 Cal.App.5th 155, 178-179.) There is a rebuttable presumption that a heath care facility retaliated against an employee who presented a complaint or grievance if the facility was aware of the grievance and took adverse action against the employee within 120 days of the filing of the grievance or complaint. (Health & Saf. Code, § 1278.5, subd. (d)(1), (2).)

Appellant identifies nine specific categories of retaliatory action taken against him by Dignity: (1) reducing appellant's scheduled operating room time, providing less operating room support and requiring him to perform surgeries with an unqualified and unfamiliar second surgeon; (2) informing another local hospital that one or more of appellant's cases had "significant adverse outcomes" before meeting with appellant about those cases; (3) obstructing his ability to perform surgeries by rescheduling them for non-medical reasons and referring his patients to other hospitals; (4) depriving appellant of due process by not following the hospital's own bylaws; (5) not explaining to appellant the impacts his agreement to voluntarily restrict his staff privileges; (6) rejecting his rescission of the voluntary

7

restriction of privileges; (7) filing a false 805 report and report to the NPDB; (8) forcing appellant to resign; and (9) interfering with his right to practice his occupation elsewhere by refusing to provide prospective employers with records from the FPPE. Appellant contends these acts were presumptively retaliatory because they occurred within 120 days of his last grievance. He argues the trial court erred in granting the anti-SLAPP motion because Dignity did not present evidence rebutting this presumption.

Dignity counters, and the trial court found, that appellant failed to show a probability of prevailing because the conduct on which he relies was privileged. We agree.

Two privileges are at issue here: the litigation privilege in section 47, subdivision (b), and the common interest privilege in section 47, subdivision (c). The litigation privilege confers an absolute privilege on communications made as part of a judicial or other "truth-seeking" official proceeding. This includes communications made in connection with a medical peer review proceeding. (*Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192, 202-203; *Ramalingam v. Thompson* (2007) 151 Cal.App.4th 491, 499-500.) As applied to a peer review proceeding, the privilege is intended to afford participants unfettered access to the proceeding without fear of subsequent derivative tort actions. (*Bonni v. St. Joseph Health System* (2022) 83 Cal.App.5th 288 (*Bonni II*); *Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 115.) To accomplish that purpose, the privilege extends to steps taken before and after the peer review itself. (*Klem v. Access Ins. Co.* (2017) 17 Cal.App.5th 595, 613.) We

8

broadly apply the privilege and resolve doubts in favor of its application.  (*Ibid*.)

The common interest privilege is more qualified.  It extends to "a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication is innocent, or (3) who is requested by the person interested to give the information."  (§ 47, subd. (c).)  The party asserting this privilege bears the burden to show that the statement was made on an occasion that falls within the statute.  At that point, the opposing party has the burden to prove that the statement was made with malice.  (*Lundquist v. Reusser* (1994) 7 Cal.4th 1193, 1202 (*Lundquist*).)  Malice, for purposes of section 47, subdivision (c), is ""a state of mind arising from hatred or ill will, evidencing a willingness to vex, annoy or injure another person.""  (*Lundquist*, at p. 1204, quoting *Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 723.)

Here, each category of retaliatory conduct alleged by appellant involves communications that are privileged under either subdivision (b) or subdivision (c) of section 47.  First, appellant contends Dignity retaliated against him by reducing his operating room time, providing less staff support and requiring him to work with a second surgeon.  Dignity, its medical staff and appellant shared a common interest in appellant's surgical practice.  Communications regarding the conditions under which he performed surgery fall within the scope of the section 47 subdivision (c) privilege.  (*Cuenca v. Safeway San Francisco Employees Federal Credit Union* (1986) 180 Cal.App.3d 985, 995 [common interest privilege applies to

9

"Communications made in a commercial setting relating to the conduct of an employee"].)

Appellant did not present evidence that Dignity acted with malice when it engaged in these communications. Unless they were malicious, Dignity's communications in this category were privileged. Privileged communications cannot form the basis of a claim for retaliation. (*Lundquist, supra*, 7 Cal.4th at p. 1204.)

Appellant's second category of retaliatory conduct is that Dignity informed other hospitals of adverse outcomes from his surgeries. His third category is that Dignity obstructed his ability to perform surgeries by rescheduling them and by referring his patients to other hospitals. Categories 4, 5 and 6 involve Dignity failing to follow the procedures in its bylaws, failing to explain to him the effect of his voluntary restriction of privileges, and its refusal to accept his rescission of the voluntary restriction. In category 8, appellant contends Dignity retaliated against him by forcing him to resign his position. Each of these categories involves privileged conduct and communications. Civil Code section 47, subdivision (b) privileges communications that are related to a medical peer review, including communications made in the course of appellant's FPPE, communications among Dignity staff members with or about appellant, and communications with others regarding the peer review. (*Bonni II, supra,* 83 Cal.App.5th at pp. 302-304.) The communications are also privileged under section 47, subdivision (c) because all of the hospitals and patients involved shared a common interest in appellant's performance as a surgeon.

Appellant's seventh category of retaliatory conduct is Dignity's filing of an 805 Report and a NPDB report. These

reports are absolutely privileged under subdivision (b) of section 47. (*Bonni, I, supra,* 11 Cal.5th at pp. 1017-1018; *Joel v. Valley Surgical Center* (1998) 68 Cal.App.4th 360, 372.)

The last category is Dignity's failure to communicate with prospective employers by providing those entities with records from the FPPE. This is also privileged because the section 47, subdivision (b) privilege extends to silence that communicates information related to the FPPE or its conclusion. (*Crossroads Investors, L.P. v. Federal National Mortgage Assn.* (2017) 13 Cal.App.5th 757, 787; *Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 343 (*Kachlon*) [recording a notice of default is a privileged communication and failing to record a rescission of the notice is "no less privileged"].)

"A plaintiff cannot establish a prima facie case if the litigation privilege precludes a defendant's liability on the claim." (*Timothy W. v. Julie W.* (2022) 85 Cal.App.5th 648, 661-662.) Because all of the retaliatory conduct alleged by appellant is covered by the litigation or common interest privileges, any cause of action based on that conduct is barred by the anti-SLAPP statute. (*Bonni II, supra,* 83 Cal.App.5th at pp. 306-307; *Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 972 (*Seltzer*).)

<u>Intentional Interference with Prospective Economic Advantage</u>. The trial court correctly concluded that appellant failed to show a probability of prevailing on the merits of his claim for interference with prospective economic advantage. This claim is based on Dignity's failure to share records relating to the FPPE with two hospitals that appellant alleged had expressed an interest in hiring him. As we have noted, Dignity's silence on questions about the FPPE is subject to the litigation privilege in section 47, subdivision (b). (*Kachlon, supra,* 168 Cal.App.4th at

11

p. 343.)  The trial court properly granted the motion to strike this claim.  (*Seltzer, supra,* 182 Cal.App.4th at p. 972.)

Unlawful Business Practices.  Appellant alleges that Dignity violated Business & Professions Code, section 17200, by retaliating against him and interfering with his prospective economic advantage.  (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180.)  Because he has not shown a probability of prevailing on the merits of those claims, this claim also fails.

Attorney Fees.  "[A] prevailing defendant on a special motion to strike shall be entitled to recover that defendant's attorney's fees and costs."  (Code Civ. Proc., § 425.16, subd. (c).)  For the reasons we have explained, the trial court correctly awarded Dignity its attorney's fees and costs because it prevailed on the anti-SLAPP motion.

*Conclusion*

The trial court's orders granting the motion to strike and the motion for attorney's fees are affirmed.  Dignity shall recover its costs on appeal.

CERTIFIED FOR PUBLICATION.


YEGAN, J.

We concur:


GILBERT, P. J.


BALTODANO, J.

12

Rita Federman, Judge

Superior Court County of San Luis Obispo

_____

Novian & Novian and Farhad Novian, Andrew B. Goodman; Steptoe & Johnson and Ashwin J. Ram, Alexander W. Avery, for Defendants, Cross-Complainants and Appellants.

Manatt, Phelps & Phillips and Barry S. Landsberg, Doreen Wener Shenfeld, Joanna S. McCallum; De Castro Law Group and José-Manuel A. de Castro, Lori V. Minassian, for Plaintiff, Cross-Defendant and Respondent.