Filed 4/24/23  Tatum v. Mt. San Jacinto Community College CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| PRIMA TATUM,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MT. SAN JACINTO COMMUNITY COLLEGE, et al.,<br><br>    Defendants and Respondents. | D080519<br><br><br><br>(Super. Ct. No. RIC2003189) |

APPEAL from an order of dismissal of the Superior Court of Riverside County, Daniel Ottolia, Judge.  Affirmed.

E-Justice Project and JenEece M. Phillips for Plaintiff and Appellant.

Atkinson, Andelson, Loya, Ruud & Romo, Mark W. Thompson, and Paul McGlocklin for Defendants and Respondents.

## INTRODUCTION

Prima Tatum was hired as a chemistry professor with the Mt. San Jacinto Community College District (District) on a probationary first-year contract for the 2019–2020 academic year.  Near the end of the academic

year, the District informed Tatum it would not be reappointing her for a second contract to teach the next academic year.

Tatum filed a petition for peremptory writ of mandate under Code of Civil Procedure sections 1085 and 1094.5 seeking to compel the District to set aside its decision. She claimed the written notice she received of the District's non-reappointment decision was deficient under Education Code[1] section 87610, because it did not state reasons for the decision and it was not sent to her most recent address on file. Because of these defects, she contends her contract extended another year by operation of section 87610.

After two amendments, the trial court sustained the District's demurrer to Tatum's second amended petition without leave to amend. The court concluded it lacked subject matter jurisdiction because Tatum failed to plead facts establishing she had exhausted her administrative remedies as required under the Education Code, or that she was excused from doing so.

Tatum contends the trial court erred because the statutory requirement that she first pursue an administrative remedy does not apply to the District's alleged failure to provide adequate notice of its non-reappointment decision. Alternatively, Tatum contends if she was required to exhaust her administrative remedies, she was excused from doing so because of the COVID-19 pandemic or because filing a grievance with the District would have been futile. Finding no error, we affirm.

---

[1]    All further undesignated statutory references are to the Education Code.

2

## FACTUAL AND PROCEDURAL BACKGROUND

### I.

*Employment of Community College Faculty*

Central to Tatum's claims in the operative second amended petition (Petition) is the statutory framework that governs the employment of community college faculty. To provide context for the facts pled in the Petition, we begin with a brief discussion of the relevant provisions of the Education Code.

In California, "the employment of persons by a [community college] district to serve in faculty positions" is governed by Education Code section 87600 et seq. (§ 87600.) An academic employee employed by a community college district is either a "contract employee, regular employee, or temporary employee." (§ 87604.) A contract employee is a "probationary employee," whereas a regular or tenured employee is "a permanent employee." (§ 87602.) The governing board of a community college district is required to employ a faculty member for the first academic year of her employment on a probationary contract. (§ 87605; see § 87602, subd. (a).) Continued employment after the first year is then determined under a year-to-year process.

If a contract employee is working under her first probationary contract, the district—"at its discretion and not subject to judicial review except as expressly provided in [s]ections 87610.1 and 87611"—may either elect to reappoint the employee for a second contract for the following academic year; not reappoint the employee for a second contract; or immediately grant tenure. (§ 87608, subds. (a)–(c).) If a contract employee is working under her second contract, the district "at its discretion" may refuse to enter a third contract for the following academic year, issue a third contract for two

3

academic years, or immediately grant tenure. (§ 87608.5, subds. (a)–(c).) If a third consecutive contract is extended, the district may thereafter refuse or grant tenure to the employee. (§ 87609, subds. (a) & (b).)

The district must "give written notice of its decision" and the "reasons therefor" to the contract employee "on or before March 15 of the academic year covered by the existing contract." (§ 87610, subds. (a) & (b).) "The notice shall be by registered or certified mail to the most recent address on file with the district personnel office." (§ 87610, subds. (a) & (b).) The failure to give the required notice to an employee under her first or second contract results in "an extension of the existing contract without change for the following academic year." (§ 87610, subd. (a).) The failure to give the required notice to an employee under her third consecutive contract results in tenure. (§ 87610, subd. (b).)

Relevant here, in districts with a collective bargaining agreement that provides a "contractual grievance procedure resulting in arbitration," a probationary employee's challenge to the district's decision refusing "to reappoint a probationary employee . . . shall be classified and procedurally addressed as grievances," where the employee alleges that in making the non-reappointment decision, the district "violated, misinterpreted, or misapplied, any of its policies and procedures concerning the evaluation of probationary employees." (§ 87610.1, subd. (b).) "If there is no contractual grievance procedure resulting in arbitration, these allegations shall proceed to [a] hearing" before an administrative law judge "to determine if there is cause for not reemploying him or her for the ensuing year."[2] (§§ 87610.1,

_____

[2] Here, the parties agree the District has a contractual grievance procedure resulting in arbitration set out in a collective bargaining agreement (Agreement) between the District and the Union. And although

4

subd. (b), 87740, subds. (b) & (c).)  A probationary employee may file a grievance under subdivision (b) of section 87610.1 "on his or her behalf," or have the "exclusive bargaining representative" do so on his or her behalf. (§ 87610.1, subd. (c).)

A district's decision to not reappoint a probationary employee in her first-year contract is not "subject to judicial review pursuant to [s]ection 1094.5 of the Code of Civil Procedure,"[3] unless there has been a "final decision reached following a grievance or hearing conducted pursuant to subdivision (b) of [s]ection 87610.1" of the Education Code.  (Ed. Code, § 87611.)

---

the Agreement was included in the record as an exhibit to Tatum's declaration in support of an ex parte application for writ of mandate and order to show cause, neither party requested judicial notice of the Agreement in the trial court, or on appeal.  Thus, other than its existence, we cannot consider the provisions of the Agreement including those governing the District's grievance procedure because it was neither included as an exhibit to the Petition, nor may we on our own motion take judicial notice of its meaning.  (See e.g., *Tucker v. Pacific Bell Mobile Services* (2012) 208 Cal.App.4th 201, 210, citations omitted [" 'On review from an order sustaining a demurrer, "we examine the complaint . . . ." We may also consider matters that have been judicially noticed' . . . [and] 'exhibits attached to the pleading.' "]; *Middlebrook-Anderson Co. v. Southwest Sav. & Loan Assn.* (1971) 18 Cal.App.3d 1023, 1038 ["[T]he meaning" of an agreement "is not the type of matter made judicially noticeable by Evidence Code section 452.  To go beyond notice of the existence of a document to an interpretation of its meaning constitutes improper consideration of evidentiary matters."].)

[3]     Section 1094.5 of the Code of Civil Procedure provides for judicial review by administrative mandate to inquire into "the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the . . . board," among other tribunals.  (Code Civ. Proc., § 1094.5, subd. (a).)

## II.

*The District's Decision to Not Reappoint Tatum for a Second Contract*

Tatum was employed as "a tenured track professor" in the chemistry department at Mt. San Jacinto Community College (College) for the 2019–2020 academic year on a probationary first-year contract.[4]  In a closed session on March 12, 2020, the District, through its governing board, unanimously decided to not reappoint Tatum for a second contract for the next academic year.

On March 13, 2020, Tatum attended a meeting where she was personally notified of the District's decision.  The District was represented at the meeting by its chief human resources officer, vice president of instruction, and dean of academic programs.  The Mt. San Jacinto College Faculty Association (Union) was represented by its president.  In response to Tatum's questions at the meeting, the vice president of instruction explained the District's decision was final, a point that was reiterated by its chief human resources officer who said "the Board had spoken."  Tatum asked the union president "if there was anything [she] could do to challenge or reverse the non-reelection" decision; the union president responded "there was nothing that could be done."

At the meeting, Tatum received a written "notice of non-reelection of employment" signed by the chief human resources officer (the notice).  The notice stated it was "provided [to Tatum] according to [the requirements of] Education Code [sections] 87608 and 87610."  The same notice was also sent

---

[4]    We derive our facts from those properly pleaded in Tatum's Petition. (*Moore v. Conliffe* (1994) 7 Cal.4th 634, 638 (*Moore*) [the "familiar rules" require that we "treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions, or conclusions of fact or law"].)

to Tatum that same day by certified mail. Tatum alleged the notice was deficient because it failed to state the reasons her contract was not being renewed, and it was not mailed to her most recent address on file.

Over the next few months, Tatum made "repeated efforts" to speak with Union representatives about what she could do in response to the District's decision. Union representatives explained to Tatum that "she could not avail herself of the grievance process" because, under the Union's contract with the District, they can grieve the " 'evaluation "process" ' " but not the " ' "outcome of the evaluation." ' " The Union stated it could not identify " 'any procedural failures' " by the District, and advised Tatum "to take up her claims with human resources and the Equal Employment Opportunity Commission (EEOC)." Tatum alleged she relied on her communications *with the Union* that "she had no grounds in which to file a grievance."

In June and July 2020, Tatum repeatedly wrote to the District asserting her right to an extended contract for the next academic year based on the District's purported failure to provide notice that complied with section 87610. On June 22, 2020, the vice president of instruction responded "that he disagreed with [Tatum's] assessment" and told her, " 'The college is not extending a 2nd-year contract to you.' "

III.

*The District's Demurrer to the Second Amended Petition*

Tatum filed her original petition asserting three causes of action, for writ of ordinary mandate pursuant to section 1085 of the Code of Civil Procedure,[5] declaratory relief, and injunctive relief. Tatum filed a first

---

[5] " 'A traditional [(or ordinary)] writ of mandate under [Code of Civil Procedure] section 1085 is a method of compelling the performance of a legal, usually ministerial duty, whereas the purpose of an administrative

7

amended petition to add a fourth cause of action for writ of administrative mandate pursuant to section 1094.5 of the Code of Civil Procedure. The District demurred to the first amended petition, asserting that Tatum failed to exhaust the administrative remedies available to her under the Education Code and thus the trial court lacked subject matter jurisdiction to hear her claims.

The trial court agreed with the District and sustained the demurrer. It granted Tatum leave to amend, and instructed her to either set forth properly pleaded facts that she had filed a grievance in accordance with the Education Code, or that she was excused from doing so. Tatum's counsel responded that she "can [in amending] present evidence that administrative remedies were attempted -- were pursued, that they were excused, and/or that she properly followed the steps for the grievance."

Tatum filed her second amended petition with the same four causes of action, and requested an award of backpay and compensatory damages. The Petition did not plead *facts* that she had filed or attempted to file a grievance, or that she was prevented by the District from filing a grievance. Tatum instead added allegations, among others, that "she made repeated attempts to avail herself of administrative remedies available to her" but "availing

---

mandamus proceeding, under [Code of Civil Procedure] section 1094.5, is to review the final adjudicative action of an administrative body.' " (*Bollengier v. Doctors Medical Center* (1990) 222 Cal.App.3d 1115, 1123 (*Bollengier*); Code Civ. Proc., § 1085, subd. (a) ["A writ of mandate may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled, and from which the party is unlawfully precluded by that inferior tribunal, corporation, board, or person."].)

herself of the administrative process under [section] 87610.1 as outlined by the contract would be futile because . . . it was clear what the *[U]nion's* decision would be" (italics added); "if the grievance process [under section] 87610.1 . . . was applicable to her, that she relied on the *Union's* repeated assertions that it was not applicable to her and thus she was thwarted by the *Union* from availing herself of the grievance process" (italics added); and the grievance process under section 87610.1 "wasn't available to her at the time due to the COVID-19 related national emergency and school closure that spanned the entirety of the time period she had to file a grievance and thus she should be excused from exhausting [her] administrative remedy."

The District again demurred to the Petition on the same ground that Tatum failed to exhaust her administrative remedies under the Education Code. The trial court again found Tatum failed to allege facts establishing she had exhausted her administrative remedies, or that she was excused from doing so. The court sustained the demurrer to the Petition without leave to amend, and entered a judgment of dismissal.

DISCUSSION

I.

*Standard of Review*

Our review of the judgment of dismissal and the order sustaining the District's demurrer to the Petition is de novo. (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162 (*Novartis*).) We apply a de novo standard of review for the further reason that this appeal involves the application of an interpreted statute to undisputed facts. (*Boling v. Public Employment Relations Bd.* (2018) 5 Cal.5th 898, 912–913 [de novo review applies to any questions of law based on undisputed facts]; *Int'l Engine Parts v. Feddersen & Co.* (1995) 9 Cal.4th 606, 611 [application of an interpreted

9

statute to undisputed facts presents a question of law subject to de novo review].)

"In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory." (*Novartis, supra,* 4 Cal.5th at p. 162.) "If the demurrer was sustained, as it was in this case, our function is to determine whether the complaint states sufficient facts to state a cause of action; and if it was sustained, as it was here, without leave to amend, 'we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.' " (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1381, quoting *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  We apply "long-settled rules.  'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.' " (*Blank*, at p. 318.)  "Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Ibid*.)

"When we interpret a statute, '[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose.  We first examine the statutory language, giving it a plain and commonsense meaning.  We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment.  If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did

not intend.' " (*Sierra Club v. Superior Court* (2013) 57 Cal.4th 157, 165–166 (*Sierra Club*).)

II.

*The Trial Court Properly Sustained the Demurrer Without Leave to Amend*

The Education Code is clear and unambiguous that a first-year contract employee, like Tatum, must follow and exhaust the grievance process provided by statute before seeking judicial review of a non-reappointment decision by a community college board.

Section 87610.1, subdivision (b), states: "Allegations that the community college district in a decision to reappoint a probationary employee violated, misinterpreted, or misapplied any of its policies and procedures concerning the evaluation of probationary employees *shall be classified and procedurally addressed as grievances.*" (Italics added.) It further states: "If there is no contractual grievance procedure resulting in arbitration, these allegations shall proceed to [a] hearing" before an administrative law judge. (§§ 87610.1, subd. (b), 87740, subds. (b) & (c).) But where, as here, the district has a contractual grievance procedure resulting in arbitration set out in a collective bargaining agreement, the contract employee must proceed under the negotiated grievance procedure and is not entitled to a hearing before an administrative law judge pursuant to section 87740. (§ 87610.1, subds. (b) & (c); but see § 87678 ["If within 30 days of the receipt of the notification by the district governing board, no written confirmation of agreement of the employee and the governing board as to an arbitrator has been submitted . . . the governing board shall certify the matter to the Office of Administrative Hearings and request the appointment of an administrative law judge."].) Finally, section 87611 is unambiguous that only "[a] final decision reached following a grievance or hearing conducted

11

pursuant to subdivision (b) of [s]ection 87610.1 shall be subject to judicial review pursuant to [s]ection 1094.5 of the Code of Civil Procedure."

In challenging the trial court's order sustaining the demurrer, Tatum does not dispute she failed to allege that she filed a grievance with the District pursuant to section 87610.1. She effectively concedes she *did not* do so before seeking judicial review of her claims. Instead, Tatum contends she was "excused" from exhausting her administrative remedies, for three reasons: (1) the grievance process set forth in section 87610.1 "simply does not apply" to her claim that the District provided inadequate notice of its non-reappointment decision under section 87610, subdivision (a); (2) if required under section 87610.1, Tatum was excused from filing a grievance with the District because "the school was shut down" (capitalization omitted) due to the COVID-19 pandemic; and (3) she was further excused because filing a grievance with the District would have been futile. We reject these contentions.

A.  *The Grievance Process Under Section 87610.1 Applies to Tatum's Challenge to the District's Non-Reappointment Decision, Including on the Basis of Inadequate Notice*

Tatum asserts she was not required to file a grievance with the District because section 87610.1 does not apply to a first-year contract employee's claim of inadequate notice under section 87610, subdivision (b). She argues this is so because the statute's only explicit reference to administrative remedies for "failure to provide notice" is contained in section 87610.1, subdivision (d), which provides: "The arbitrator shall be without power to grant tenure, except for failure to give notice on or before March 15 pursuant to subdivision (b) of [s]ection 87610." She reasons that because the notice requirement under subdivision (b) of section 87610 applies only to third-year contract employees, the specific reference to notice under that subdivision

12

means the *grievance process itself* must not apply to notice violations involving first-year contract employees, like Tatum, under subdivision (a) of section 87610. We reject this interpretation of the Education Code.

Section 87610.1, subdivision (d), defines the *remedies* available to an arbitrator deciding a grievance; it says nothing about the grievance *process* set forth in subdivision (b), including the contract employee's obligation to utilize that process in challenging the district's discretionary decision under sections 87608 (applicable to a first-year contract employee), 87608.5 (applicable to a second-year contract employee), or 87609 (applicable to a third-year contract employee).

Further, section 87610.1, subdivision (d), provides that the arbitrator, in choosing an appropriate remedy upon deciding a grievance, "may issue an appropriate make-whole remedy, which may include, but need not be limited to, backpay and benefits, *reemployment in a probationary position*, and reconsideration." (§ 87610.1, subd. (d), italics added.) These remedies, including specifically "reemployment in a probationary position," are potential remedies which may apply to *any* probationary employee, including one in her first-year contract. But the single remedy of granting tenure to a probationary employee is *not* available unless there has been a "failure to give notice" to a third-year contract employee under subdivision (b) of section 87610. (§ 87610.1, subd. (d), italics added.) That is because the failure to give notice to a third-year contract employee, by operation of law, "shall be deemed a decision" to grant the employee tenure. (§ 87610, subd. (b).)

We conclude, contrary to the interpretation urged by Tatum, that the specific reference in section 87610.1, subdivision (d), to an arbitrator's authority to grant the remedy of tenure to a third-year contract employee

13

*upon finding a notice violation* makes clear that a claim of notice violation is *not* exempt from the grievance process under the statute.

Taking a different tack, Tatum argues section 87610.1, subdivision (b), "specifically references that the grievance process applies to a 'decision to grant tenure' " and the failure to provide notice to a first-year contract employee under section 87610, subdivision (a), "does not constitute a decision to grant tenure." But this argument ignores the very next sentence in section 87610.1, subdivision (b), that expressly provides the grievance process applies to the district's "decision to reappoint a probationary employee," and section 87608 (applicable to a first-year contract employee) that expressly provides the district's decision to reappoint a probationary employee is "not subject to judicial review except as expressly provided in [s]ections 87610.1 and 87611." In interpreting a statute, " '[w]e do not examine . . . language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment.' " (*Sierra Club*, *supra*, 57 Cal.4th at pp. 165–166.)

Lastly, Tatum argues section 87610.1 is "clear[ ] that the violation must be regarding the 'evaluation' of a probationary employee, and [has] nothing to do with the notice requirements" under section 87610, subdivision (a). We disagree. The whole of the statute states the grievance process applies to allegations that a district in its decision to reappoint a probationary employee "violated, misinterpreted, or misapplied, any of its policies and *procedures* concerning the evaluation of probationary employees."[6] (§ 87610.1, subd. (b), italics added.) Moreover, as we have

---

[6] We note that Tatum's pleaded facts in the Petition suggest her claim of a notice violation is intertwined with the District's evaluation of her performance. She alleged that during her repeated communications with the

14

explained, section 87610.1, subdivision (d)'s limitation on the arbitrator's authority to grant the remedy of tenure to a third-year contract employee *upon finding a notice violation* makes clear alleged notice violations are *not* exempt from the grievance process under the statute.

B.  *Tatum Failed to Allege Sufficient Facts to Establish Any Exception to the Rule Requiring Exhaustion of Administrative Remedies*

"[W]here an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 292; *id.* at p. 293 ["exhaustion of the administrative remedy is a jurisdictional prerequisite to resort to the courts"].)  "A writ of mandate under section 1094.5 may be issued to review an administrative decision only if that decision is final." (*Bollengier, supra,* 222 Cal.App.3d at p. 1125; see *California Water Impact Network v. Newhall County Water Dist.* (2008) 161 Cal.App.4th 1464, 1489 [to exhaust administrative remedies, a party must proceed through the full administrative process " 'to a final decision on the merits' "].)  The rule that administrative proceedings should be completed before the issuance of a judicial writ is "not a matter of discretion; compliance is a jurisdictional prerequisite to judicial review." (*California Water Impact Network,* at p. 1489.)

There are exceptions to the exhaustion requirement.  A party will be excused from the requirement if the remedy is unavailable, would be inadequate, or its pursuit would be futile.  (See, e.g., *Tiernan v. Trustees of*

---

Union about "what [could] be done in response to the [District's decision]," Union representatives told her "she could not avail herself of the grievance process" because, under the Agreement with the District, they can grieve the " '*evaluation* "process" ' " but not the " ' "outcome of the *evaluation*." ' " (Italics added.)

15

*Cal. State University & Colleges* (1982) 33 Cal.3d 211, 217 ["[i]t is settled that the rule requiring exhaustion of administrative remedies does not apply where an administrative remedy is unavailable" or "inadequate"]; *Bollengier*, *supra*, 222 Cal.App.3d at p. 1126) ["even where there is an administrative remedy to exhaust, the exhaustion requirement is excused where its pursuit would be futile, idle or useless"].)

Here, Tatum asserts she was excused from exhausting her administrative remedies because the grievance process was unavailable during the closure of the College due to the COVID-19 pandemic, and pursuing a grievance would have been futile. We reject these assertions. Despite having been given leave to amend to specifically allege facts to support any legal excuse from the failure to exhaust administrative remedies, Tatum failed to do so.

As to the first asserted excuse, Tatum alleged in her Petition she was notified on March 13, 2020 that the College " 'will close all campus and off-site locations until April 6, [2020],' " pursuant to local and national public health orders. She then simply alleged "the appropriate grievance process . . . wasn't available to her . . . due to the COVID-19 related national emergency and school closure that spanned the entirety of the time period she had to file a grievance and thus she should be excused from exhausting this administrative remedy." But nowhere in the Petition does Tatum allege *facts* to suggest she ever attempted to file a grievance with the District but could not do so, including because the College was closed or unable to process her claim due to the pandemic's impact on its operations. We conclude Tatum's conclusory and bare allegation that the grievance process was not available to her because of the COVID-19 public health emergency is

16

insufficient, as a matter of law, to establish that the administrative remedy was unavailable.

Indeed, Tatum effectively concedes on appeal that "administrative offices remained open," but asserts "that does not negate the fact that the school was in a sudden calamity that interfered with the normal operation of the [C]ollege." She then argues that "[i]n the midst of a stay-at-home shelter mandate, going to the college to defend her rights and risking her health and the health of others would conflict with the necessary emergency procedures put in place, especially since part of the grievance process under the Agreement calls for a conference."[7] We accept that Tatum may not have been able or wanted to file a grievance *in person* given the public health orders in place. But her own allegations in the Petition demonstrate she was able to communicate "both verbally and in writing" with the District (and Union), including through telephone calls, Zoom conference calls, letters, and emails during the pandemic-related closure. Indeed, using all those methods of communications, Tatum *repeatedly* contacted the District to demand her reinstatement in the months of June and July 2020. And, according to her Petition, the District did respond to her communications.

Yet Tatum does not allege in her Petition, nor explain on appeal, why she could not have used any one of these available methods of communications to file a grievance, or to simply indicate her desire to file a grievance. She fails to allege that she ever sought to invoke the grievance process and was informed the District could not process her request, for any reason, including as a result of the pandemic's impact on the College

---

7  As we discuss later, Tatum's failure to include specific allegations about the Agreement in her Petition, or to attach a copy of it to her Petition, is fatal to her arguments that rely on the terms of the Agreement.

17

operations. This deficiency is critical because Tatum only included the pandemic allegation *after* the trial court had sustained the District's demurrer to her first amended petition with leave to amend. And despite specific instructions from the trial court and the opportunity to cure the deficiency in her Petition to include facts to support her excusal from filing a grievance, her second amended petition still fell short.

Second, Tatum asserts she was excused from filing a grievance because doing so would have been futile. "Futility is a narrow exception" to the exhaustion doctrine (*Doyle v. City of Chino* (1981) 117 Cal.App.3d 673, 683), and only applies if " ' "the petitioner *can positively state* that the [administrative agency] has declared *what its ruling will be in a particular case*" ' " (*Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 418; accord *Bollengier*, *supra*, 222 Cal.App.3d at p. 1126). As we shall explain, Tatum has not established futility as a matter of law because all of her complaints, as pled in the Petition, are directed towards the Union, *not the District* which is tasked with the decision-making authority.

In her Petition, Tatum alleged that "availing herself of the administrative process under [section] 87610.1 as outlined by the [Agreement] would be futile because *the [U]nion* had already announced and it was clear what *the [U]nion's decision* would be." (Italics added.) She repeated that "any attempts to avail herself of the grievance process . . . would have been futile as she had already been informed of the *Union's* decision." (Italics added.) She also alleged that she "*relied on the communications between her and Union officers* between March 13, 2020 and June 2020 that after a thorough review she had no grounds in which to file a grievance as she could only grieve the evaluation process (which she was not grieving) and if she submitted a grievance it would be determined that the

18

District had the right to terminate her in the manner that they did." (Italics added.)

These allegations fail to establish futility, inasmuch as the Union was not the "body charged with hearing and deciding" her grievance. (*Tejon Real Estate, LLC v. City of Los Angeles* (2014) 223 Cal.App.4th 149, 158 (*Tejon*) [affirming demurrer after determining "statement of opinion by city representatives" who were not the relevant decisionmakers was "not sufficient to allow appellant to invoke futility"].) In fact, the Union had an adversarial relationship with the District and could not have represented the District's position. (See § 87610.1, subd. (c) [union representative may file grievance *against* district on behalf of employee or group of employees].)

If Tatum had followed the District's grievance process, on the other hand, she would have been entitled to a hearing before an arbitrator (§§ 87610.1, subd. (b), 87740, subd. (c)(3)), or a *neutral* administrative law judge if she and the District could not agree on an arbitrator (§ 87678), neither of whom would have prejudged her claims against the District. Tatum's allegation of futility is thus legally flawed.

On appeal, Tatum argues "she inquired of various officials from the District" and was "repeatedly advised that she could not file a grievance." But her Petition, *after amendment*, is devoid of such facts regarding the District, and thus we reject her argument. (See Code Civ. Proc., § 430.10, subd. (e).) What Tatum alleged in her Petition is that she asked whether the board's decision "was a final decision" and that the District's vice president of instruction responded that "it was." Similarly, after Tatum asked "what could be done to respond," the District's chief human resources officer stated that "the Board had spoken." These allegations fail to show the *District* told her that she could not file a grievance, or that they would deny a grievance if

19

she did file one.  (See *Tejon*, *supra*, 223 Cal.App.4th at p. 158 ["Appellant did not receive a final determination from the City and [therefore] . . . [i]t would be premature for a court to step in at this point[.]"].)

But even considering these new allegations for purposes of determining further amendment to the Petition, we note they are devoid of any facts. Rather, in her opening brief on appeal, she merely asserts she "was in communication with the District's staff, and through that communication, it was *apparent* that filing a grievance would be futile."  (Italics added.)  We cannot just assume that had she attempted to file a grievance, her request would have been denied and consequently her attempt would have been " 'a futile and useless gesture.' "  (*Edgren v. Regents of University of California* (1984) 158 Cal.App.3d 515, 522 (*Edgren*).)  " 'If, under such circumstances relief had been sought and denied, then there would have been [a] basis for appeal. . . .  It cannot be heard to complain in this court that there was danger of refusal when [Tatum] made no effort to do so.'  The showing necessary to invoke the futility exception must be substantially stronger than that alleged" here.  (*Ibid*.)

Finally, Tatum argues that "the District through its Chief Human Resources Officer, President, and Vice President, through their own conduct, actively prevented [her] from availing herself of this administrative remedy." Once again, however, her Petition failed to include any allegations of specific action taken by these District representatives to prevent her from filing of a grievance.  There are no allegations that she asked a District representative about filing a grievance or that she was told anything about filing a grievance by a District representative.  Although she alleges that the Union told her she could not file a grievance, she does not cite any authority, and this Court is unaware of any, whereby procedural advice from a union representative

20

regarding a contract employee's right to challenge a decision by a community college district may be imputed to the district.[8]

In fact, the authority Tatum relies on for estoppel actually supports the sustaining of the demurrer in the instant case. (See *Farahani v. San Diego Community College Dist.* (2009) 175 Cal.App.4th 1486.) In *Farahani*, the Court of Appeal held the community college district "was estopped by its own conduct from relying on the exhaustion doctrine" where the district's "denial of 'appeal rights' [of the petitioner] was unequivocal and encompassed all avenues of appeal." (*Id.* at p. 1497.) This case is not *Farahani*. There simply are no allegations that *the District* took any action to persuade or prevent Tatum from filing a grievance, which action is necessary to support an estoppel theory.

C.    *Tatum's Petition Is Insufficient to Support Her Newly-Asserted Reasons That the Specific Terms of the Agreement Excused Her from the Grievance Process*

In her opening brief on appeal, Tatum relies on the Agreement to advance two additional reasons why she was not required to pursue a grievance with the District.

First, Tatum asserts "the Agreement specifically states that 'the District retains the right to hire, classify, assign, evaluate, promote, terminate, and discipline Unit Members," and that "[a]ll such matters, unless otherwise provided for in this [A]greement, are excluded from the grievance procedure." (Italics and boldface omitted.) And because the "Agreement is silent on matters of notice," she argues notice violations are necessarily

---

[8]    In filing her first amended petition, despite directing her complaints at the Union, Tatum removed the only Union representative (its president) as a respondent because she was "incorrectly named" in the original petition.

21

excluded from the grievance procedure.  She further contends the "Agreement defines a grievance as 'a formal written allegation submitted on a mutually approved form by a grievant that the grievant has been adversely affected by a violation, misinterpretation, or misapplication of provisions of this agreement.' "  (Boldface omitted.)  She argues that because the Agreement "makes no mention of notice requirements, the notice requirements as described in . . . section 87610[, subd.] (a) is in no way a violation, misinterpretation, or misapplication of provisions of the [A]greement."

Second, Tatum asserts that "[i]n the instance of an extreme emergency, any provision in the Agreement that conflicts with necessary emergency procedures will be suspended for the duration of the emergency."  And since the COVID-19 pandemic can be said to be an extreme emergency as defined by the Agreement, "if the grievance process applied, the only administrative process that was available to Appellant was suspended.  This should excuse her from the exhaustion doctrine and give the trial court the necessary jurisdiction for her case."

But as we have noted, Tatum failed to attach a copy of the Agreement to her Petition, failed to quote relevant portions verbatim or substantively in her Petition, and failed to request either the trial court or this court to take judicial notice of it.  If a pleading relies on a contract and does not attach it, the "contract should be pleaded either in *haec verba* [(exact language)] or according to its legal intendment and effect."  (*Scolinos v. Kolts* (1995) 37 Cal.App.4th 635, 640; accord *Construction Protective Services, Inc. v. TIG Specialty Ins. Co.* (2002) 29 Cal.4th 189, 198–199.)

Here, the only mention of any purported terms of the Agreement in the Petition is where Tatum quotes an email from the Union's grievance officer, informing her: " '[A] grievance can only be filed if the College has violated an

article of the Contract. Although we can grieve the evaluation "process" by Contract language we cannot grieve the "outcome of the evaluation." ' " The Petition then quotes the grievance officer's subsequent email informing Tatum, " 'I have attached the Contract Articles that I used to guide our conversation earlier this year.' " It quotes the grievance officer's conclusion that, " 'Given the specific language of the Contract Article X . . . [¶] After a very thorough review I could not identify any procedural failures on the part of the District. The District had the right to terminate you.' " (Boldface omitted.)

But rather than plead the precise language or the legal effect of the relevant portions of the Agreement, the Petition appears to paraphrase in a parenthetical what the grievance officer allegedly quoted from the Agreement: "(Dr. Roy Mason then goes on to paste excerpts of the contract regarding evaluations and highlights the line from the contract - 'violation of the specific provisions of this contract relating to evaluation procedures'. [*Sic*] Dr. Roy Mason also highlights the terms 'terminate' and 'excluded from the grievance procedure' from the line in the contract language that reads 'In addition, the District retains the right to hire, classify, assign, promote, terminate, and discipline Unit member as authorized by applicable codes. All such matters, unless otherwise provided for in this agreement, are excluded from the grievance procedure.')." (Boldface and underscore omitted.) Also absent from the Petition are the provisions of the Agreement that purportedly suspended the grievance procedure as a result of the COVID-19 pandemic being an "extreme emergency" as defined by the Agreement.

Although Tatum's additional reasons why she is excused from the grievance process under the terms of the Agreement are new and articulated for the first time on appeal, they also fail because they have no support in

23

what she actually pleaded in the Petition. "Where a party relies upon a contract in writing, and it affirmatively appears that all the terms of the contract are not set forth in *h[a]ec verba*, nor stated in their legal effect, but that a portion which may be material has been omitted, *the complaint is insufficient*." (*Gilmore v. Lycoming Fire Ins. Co*. (1880) 55 Cal. 123, 124, italics added.) We are therefore compelled to reject her arguments that rely on specific terms of the Agreement.

We reject the arguments for another reason. Even if the Petition had sufficiently alleged the relevant provisions of the Agreement, Tatum still would have had to exhaust her administrative remedies before seeking judicial review. The exhaustion rule applies whether the administrative procedure is contained in a statute, policy, or collective bargaining agreement. (See *Edgren*, *supra*, 158 Cal.App.3d at pp. 521, 522 [plaintiff required to exhaust administrative remedies even where he claims "the subject of the controversy lies outside of the jurisdiction of [the school's] administrative procedure" under its personnel policies and procedures, and "despite plaintiff['s] asserted denial of procedural due process"]; *Griswold v. Mt. Diablo Unified School District* (1976) 63 Cal.App.3d 648, 652 ["Even where the statute sought to be applied and enforced by the administrative agency is challenged upon constitutional grounds, completion of the administrative remedy has been held a prerequisite to equitable relief."].) Thus, whether the grievance process set forth in the Agreement expressly applies to notice violations (or not) does not absolve Tatum of her obligation to exhaust her administrative remedies.

D.   *Because Tatum Is Not Entitled To Mandamus Relief Her Causes of Action for Declaratory and Injunctive Relief Also Fail*

Tatum's third and fourth causes of action seek declaratory and injunctive relief, respectively. However, because her Petition includes no

24

allegations that would otherwise entitle her to legal relief including under Code of Civil Procedure sections 1085 or 1094.5, Tatum's third and fourth causes of action also fail. (*Faunce v. Cate* (2013) 222 Cal.App.4th 166, 173 ["injunctive and declaratory relief are equitable remedies, not causes of action"]; *Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1360, fn. 2 [noting that "cause[s] of action" for purposes of the anti-SLAPP statute (Code Civ. Proc., § 425.16 subd. (b)(1)) does not include " 'specific performance/injunctive relief' " because these "are equitable remedies and not causes of action for injuries"].)

In any event, we note Tatum does not make any arguments with respect to either of these causes of action and for this separate reason we conclude they are forfeited on appeal in considering the sufficiency of her Petition. (*Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210, 1215 ["Contentions are waived when a party fails to support them with reasoned argument and citations to authority."]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 ["When an appellant fails to raise a point . . . , we treat the point as waived."].)

E.     *The Trial Court Did Not Abuse Its Discretion in Denying Leave to Amend*

In sum, Tatum already has been given the opportunity to amend her Petition to include allegations she was excused from the exhaustion requirement. These allegations, however, are insufficient as a matter of law. Because Tatum was required to exhaust her administrative remedies and did not do so, we conclude the demurrer to her Petition was properly sustained without further leave to amend.

## III.

### *The District's Request for Sanctions Is Denied*

The District requests sanctions against Tatum and her appellate counsel for pursuing what it claims is a frivolous appeal. Tatum opposes the request for sanctions, asserting that her appeal was "not in order to harass or delay but rather to have her claim heard and resolved in accordance with the law." Whether to impose appellate sanctions is a matter within our broad discretion. (*Winick Corp. v. County Sanitation Dist. No. 2* (1986) 185 Cal.App.3d 1170, 1181–1182.) Exercising that discretion, we conclude the District is not entitled to sanctions and deny its request.

"[S]anctions should be used sparingly to deter only the most egregious conduct." (*Kleveland v. Siegel & Wolensky, LLP* (2013) 215 Cal.App.4th 534, 557 (*Kleveland*).) Code of Civil Procedure section 907 provides that "[w]hen it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." Additionally, California Rules of Court, rule 8.276(a)(1), allows a reviewing court to impose sanctions on a party or an attorney for the taking of a frivolous appeal or appealing solely to cause delay.

" '[A]ny definition [of a frivolous appeal] must be read so as to avoid a serious chilling effect on the assertion of litigants' rights on appeal. Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win on appeal. An appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions.' " (*In re Reno* (2012) 55 Cal.4th 428, 513.) "An unsuccessful appeal . . . ' "should not be penalized as frivolous if it presents a unique issue which is not indisputably without merit, or involves facts which are not amenable to easy analysis in terms of existing law, or makes a reasoned

argument for the extension, modification, or reversal of existing law." ' " (*Kleveland*, *supra*, 215 Cal.App.4th at p. 557.) "[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.)

Applying these standards, we are not convinced that this appeal was "totally and completely devoid of merit" or the "most egregious" kind that would merit monetary sanctions. (See *Kleveland*, *supra*, 215 Cal.App.4th at pp. 556–557.) Although we ultimately have determined that Tatum's arguments lack merit, we cannot say they were objectively devoid of any merit as to warrant sanctions. The District's request is denied.

DISPOSITION

The order sustaining the second amended petition without leave to amend is affirmed. The District shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).) The District's motion for sanctions is denied.


DO, J.


WE CONCUR:


O'ROURKE, Acting P. J.


IRION, J.

27